William E. Speer v. Commissioner.
Speer v. Commissioner
Docket No. 86707.
United States Tax Court
T.C. Memo 1962-220; 1962 Tax Ct. Memo LEXIS 89; 21 T.C.M. (CCH) 1164; T.C.M. (RIA) 62220; September 17, 1962
*89 1. Petitioner, a funeral director, purposefully padded the direct expenses itemized for each funeral in his records purportedly to cover indirect expenses, and had his tax returns prepared from his records. Held, a part of the deficiencies for each of the years involved was due to fraud with intent to evade tax. 2. Petitioner's filing of an amended return, purporting to be a joint return, for 1955 more than 3 years after the return was due and after the notice of deficiency herein was issued was not effective under section 6013(b), I.R.C. 1954, to permit computation of the tax on a joint return basis. Meyer Weiner, CPA, 130 N. Eighth St., Reading, Pa., for the petitioner. Frederick A. Levy, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion
DRENNEN, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax as follows: Additions to tax
Sec. 294
Sec. 293(b),
Sec. 6653(b),
(d)(1)(A),
Year
[1] *90 Deficiency I.R.C. 1939
I.R.C. 1954
I.R.C. 1939
1953
$ 2.89
$400.15
1954
153.90
$ 996.55
$.45
1955
1,494.47
2,717.89 and overassessments of additions to tax under section 294(d)(2) for the years 1953 and 1954 in the amounts of $47.84 and $110.35, respectively, and under section 294(d)(1)(A) for the year 1953 in the amount of $7.73. The notice of deficiency was dated February 15, 1960, and computed the tax on the basis of a married individual filing a separate return. The issues for decision are: (1) Whether any part of any deficiency in tax for each of the years 1953, 1954, and 1955 was due to fraud with intent to evade tax. (2) Whether resondent erred in determining the deficiency for 1955 on the basis of a married individual filing a separate return. Other issues raised by the pleadings were either conceded or abandoned by the parties at the trial or on brief, including a concession by respondent that he overstated petitioner's gross receipts from his business by $1,045 in determining the deficiencies for 1955. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. During the years 1953, 1954, and 1955, petitioner was a resident of Burnham, Pennsylvania, and filed an individual *91 income tax return for each of those years on a cash basis with the district director of internal revenue, Philadelphia, Pennsylvania. Petitioner was married and living with his wife on the last day of each of the taxable years 1953, 1954, and 1955. The original returns filed by petitioner were captioned in his name alone, were signed by him alone, and it was not indicated anywhere thereon that they were intended to be joint returns. Petitioner's wife did not have any income during those years and did not file a separate return for any of those years. Petitioner executed and filed a waiver extending the time for assessment of the tax for 1955 to June 30, 1960. After the filing of a petition in this case, petitioner filed an amended return for 1955 which purported to be a joint return of husband and wife, which was mailed to respondent's representative by certified mail on June 29, 1960. During the taxable years 1953 to 1955, inclusive, petitioner operated a funeral parlor as a sole proprietorship in Burnham. Petitioner's principal income was derived from his funeral parlor business and his services as an undertaker. Petitioner's returns for the years 1953, 1954, and 1955 reported the *92 following: 1953
1954
1955
1955 *
Total receipts
$20,954.35
$26,916.61
$46,279.72
$46,297.79
Cost of goods sold
15,472.30
22,557.00
41,781.21
19,894.09
Gross profit
$ 5,482.05
$ 4,359.61
$ 4,498.51
$26,448.70
Other business deductions
3,248.12
2,734.50
2,785.59
8,009.85
Net profit
$ 2,233.93
$ 1,625.11
$ 1,712.92
$18,438.85
Adjusted gross income
2,233.93
1,625.11
1,712.92
18,622.31
Deductions
570.10
Net income (or balance)
$ 1,663.83
$ 1,625.11
$ 1,712.92
$17,632.31
Less exemptions
1,800.00
1,800.00
1,800.00
1,800.00
Income subject to tax: Taxable income
15,832.31
Tax due
3,866.69
Self-employment tax
51.39
126.00
During each of the years here involved, petitioner personally maintained a form of funeral director's book in which he entered, using a separate page for each funeral conducted, the fee he charged for each funeral, a notation of receipt of payments, and an itemized listing of the direct expenses allegedly incurred in connection with each funeral for such items as casket, burial vaults, embalming, dressing the body, hearse, limousine, flowers, burial permits, assistants, opening of graves or tombs, and other miscellaneous items related to conducting a particular funeral. The entries for direct expenses were made *93 by petitioner on or about the date of the funeral to which they were related and, for the most part, were purposely in excess of the actual expense incurred. The expense entries were padded, according to petitioner, to cover indirect expenses, such as "insurance, upkeep and so on," for which there was no specific place on the record books, and to make the profit total about $90 per funeral, which he had read in a trade magazine was about the average profit made per funeral. The expense entries in his books were not totaled in the books. However, for 1953 they totaled approximately $15,000, for 1954 approximately $22,000, and for 1955 approximately $31,900. Petitioner paid some of his expenses by cash and some of them by check. He did not reconcile his expenses paid by check with the actual and estimated expenses recorded in his record books. Petitioner's original income tax returns for the years 1953-1955 were made out for him at a cost of $10 by an individual in Burnham who held himself out to the public to be qualified to prepare income tax returns. In making out petitioner's returns this individual relied primarily on petitioner's funeral record books and petitioner's mental estimates *94 of other expenses incurred in his business, such as utilities, advertising, insurance, repairs, and depreciation. The recorded expenses were entered on the returns as cost of goods sold. [2] and the unrecorded estimates were entered on the returns as other business deductions. Petitioner did not inform this individual that for the most part the expense entries in his funeral record books were not his actual expenses. The receipts recorded in petitioner's books and reported on his returns were approximately $700 less than his actual receipts for 1953, about $2,050 less than his actual receipts for 1954, and practically the same as his actual receipts for 1955 after eliminating from recorded receipts for 1955 the amount of $1,045 for two funerals where receipts were recorded but not actually collected. Petitioner overstated his actual trade or business deductions on his original returns for the years here involved in the amounts of $3,421.01 for the year 1953, $8,772.20 for the year *95 1954, and $16,725.93 for the year 1955. Petitioner conducted 47 funerals in 1953, 52 funerals in 1954, and 80 funerals in 1955. His average profit per funeral in the years 1953-1955, based on the net profit he reported for his funeral parlor business on the returns for those years, was $47.53, $31.25, and $21.41, respectively. Sometime in January 1956, after his income tax return for 1955 had been prepared showing no income tax due although he had $5,000 in the bank, petitioner went to a local office of the Internal Revenue Service, presented his funeral record books for 1955 to one of the personnel there, and requested that someone determine the amount of income tax he owed for the year 1955. He did not inform anyone at that office of the mode in which he maintained his funeral record books or that his return for 1955 had already been prepared. His request was denied and he was advised to engage the services of an accountant. Petitioner did not engage an accountant until sometime after November 1, 1956, when an agent of the Internal Revenue Service, who had been assigned petitioner's 1955 return for examination, suggested that he do so. Petitioner was cooperative with this agent and *96 with the other agents subsequently assigned to audit his returns. The date noted next to petitioner's signature on his original return for 1955 was January 16, 1956. This return was stamped "Rec'd with remittance" by the district director of internal revenue at Philadelphia with the date March 2, 1956. On March 16, 1959, during one of the conferences that culminated in petitioner signing the waivers of April 14, 1959, an agent of the Internal Revenue Service who investigated petitioner's returns for the years here involved indicated to petitioner's representative that he was going to recommend in his report that petitioner's tax for the year 1955 be computed on the basis of a joint return. At this conference petitioner's representative offered to have petitioner and his wife file an amended joint return for 1955, but the agent stated that such was not necessary and would result in delaying his report. Petitioner's representative, a former agent of the Internal Revenue Service, knew at the time of the conference that the agent's report was subject to review by the agent's supervisors. On April 14, 1959, petitioner signed waivers of restriction on assessment and collection of deficiency *97 in tax and additions to tax, other than for fraud, for the years 1953-1955 which caused taxes and additions to tax to be assessed and paid prior to the issuance of the statutory notice of deficiency in this case, as follows: Year
Tax
Addition to tax
1953
$ 797.40
$127.60
1954
1,839.19
294.27
1955
3,941.30
Petitioner's original income tax return for 1955 was treated as a joint return in computing the taxes assessed pursuant to the waiver for that year. The deficiency in tax for 1955 before the Court in this proceeding results from respondent's determination that petitioner's original return for 1955 was that of a married person filing a separate return. Ultimate Findings of Fact At least a part of the deficiency in petitioner's income tax for each of the years 1953, 1954, and 1955 was due to fraud with intent to evade tax. Petitioner did not file a joint income tax return for the year 1955 prior to June 29, 1960. Petitioner, without reasonable cause, failed to file a declaration of estimated tax for the year 1954, though required to do so. Opinion There is no real dispute here as to the amount of net income or taxable income. Respondent concedes that gross income for 1955 is overstated by $1,045 *98 because of the inclusion in gross income of fees for two funerals that were not collected in full. Petitioner claims the overstatement is $1,095. The evidence does not support petitioner's claim to the additional $50 of overstatement and we adopt the amount conceded by respondent as the correct amount of overstatement. The parties have stipulated the amounts by which trade or business deductions were overstated in the returns, and there is no evidence to support any other adjustments in petitioner's net income and taxable income for the years involved as determined by respondent. The above adjustment to gross income for 1955 will be reflected in the Rule 50 computations. Petitioner introduced no evidence with respect to, and abandoned on brief, the issue of an addition to tax for the year 1954 under section 294(d)(1)(A) of the 1939 Code. Our ultimate finding of fact disposes of this issue in favor of respondent. The principal remaining issue is whether any part of the deficiencies for each year is due to fraud with intent to evade tax. Respondent has the burden of proving fraud by clear and convincing evidence. Arlette Coat Co., 14 T.C. 751 (1950). We have determined from our observations *99 of the witnesses on the stand, and our examination and analysis of the evidence presented in the light of those observations, that respondent has carried that burden and that at least a part of the deficiencies for each year was in fact due to fraud on the part of petitioner with intent to evade tax. Petitioner was successfully engaged in the funeral parlor and undertaking business during the years 1953 through 1955 and did not impress us on the witness stand as being as ignorant of bookkeeping procedures and tax accounting as his testimony might lead one to believe. This business was apparently his only source of income and he was conscious of the fact that he had to make a profit in it to exist. He bought a form of funeral director's record book which he had seen advertised, purportedly for the purpose of keeping track of his profits, and made all the entries therein himself. The expense entries were for the most part made near to the time of the funeral when the expenditures had recently been made, but they were admittedly overstated and in part, at least, estimated. It is hard to understand how such a record could aid petitioner in keeping track of his profits. And it is hard to *100 believe that petitioner deliberately padded his recorded expenses only to fool himself. Petitioner testified that he padded the recorded expenses to make the profit average out to about $90 per funeral, which he understood was about the average profit he should make. But petitioner's records do not support this testimony - and the average profit per funeral based on the income he reported was $47.53 in 1953, $31.25 in 1954, and $21.41 in 1955. Petitioner was also aware of the fact that his income tax would be based largely on the actual net profit he realized from his business. Nevertheless he testified that in order to have his tax returns prepared he simply took his books to an individual who prepared tax returns without telling him about the false entries in the books, knowing that that individual would rely almost entirely on the information in the books to prepare the tax returns, and then signed the returns without questioning them. Petitioner also testified that he gave the individual estimates of indirect expenses such as utilities which, so far as we can determine, would duplicate estimated expenditures which were already padded into the record book. Such expenses were, in *101 fact, claimed as other business deductions in addition to the expenses recorded in the books. Furthermore, no explanation was given as to why cost of goods sold claimed on the 1955 return, which in prior years had closely approximated the recorded expenses, exceeded recorded expenses by approximately $10,000 on the return for that year. Nor was any explanation given as to how the individual who purportedly prepared the return could have arrived at the figure used. The individual who prepared the returns was not called as a witness. We are convinced from all the evidence that petitioner deliberately padded the expenses recorded in his record books to reduce his recorded net profit or income, that this resulted in his net income or taxable income being understated on his tax returns, and that petitioner was aware of this fact when he filed his returns for each of the years involved. We are not impressed by petitioner's testimony about taking his books into the internal revenue office after his 1955 return had been prepared. It only indicates that either he filed his 1955 return knowing or having good reason to believe that it was wrong or that he was completely indifferent to the advice *102 given him that he should employ an accountant to check the books and prepare his returns. We think this deliberate and consistent overstatement of substantial amounts of trade or business deductions, without any tenable explanation, constitutes clear and convincing evidence of fraud. See In re Frank Fehr Brewing Co., 160 F. Supp. 631 (W. Ky. 1958); Bennett E. Meyers, 21 T.C. 331 (1953). The only other issue remaining is whether petitioner is entitled to have his tax for the year 1955 computed on the basis of a joint return. While petitioner argues on brief that subsequent events, primarily his offer to the revenue agent to file an amended joint return for 1955 when it became apparent that there would be some tax liability for that year, prove that he intended to file a joint return for 1955, the evidence does not support this conclusion. The original 1955 return was captioned in petitioner's name alone, was signed by him alone, and nowhere indicates that it was or was intended to be a joint return. The fact that the return was marked to indicate that his wife was not making a separate return, and the fact that after a revenue agent's investigation indicated there was tax due he offered *103 to file a joint return, does not prove that the original return was intended to be a joint return. This is not a case where husband and wife clearly intended to file a joint return originally but for some reason one of them did not sign the return. See Myrna S. Howell, 10 T.C. 859 (1948), affd. 175 F. 2d 240 (C.A. 6, 1949). The more basic question seems to us to be whether petitioner's offer to file a joint return for the year 1955 at a conference with the revenue agents on March 16, 1959, constituted an election to file a joint return within section 6013(b)(1) of the 1954 Code, despite the fact that no joint return was actually filed prior to June 29, 1960, after the notice of deficiency had been issued and the petition filed herein. It appears from the evidence that at a final conference with the revenue agents on March 16, 1959, Revenue Agent Johnson, who did not testify, told petitioner's representative that inasmuch as the statute of limitations had not run on the year 1955, and it was obvious that petitioner and his wife met all the requirements for filing a joint return, he would compute the tax for 1955 in his report to his supervisors on the basis of a joint return. Petitioner's *104 representative offered at that time to file an amended joint return but Johnson said it would not be necessary because he was computing the tax on a joint return basis in his report anyway and it would only delay his report. Petitioner's representative thereupon recommended to petitioner that he sign a waiver permitting immediate assessment of the deficiency and that he pay the tax as so computed. Johnson apparently filed his report on the above basis and petitioner paid the deficiency as so computed. Subsequently, however, a deficiency notice dated February 15, 1960, was issued, prior to the expiration of the statute of limitations as extended to June 30, 1960, by agreement of the parties, which computed petitioner's tax on the basis of a separate return filed by a married person. The petition in this case was filed on May 16, 1960. On June 29, 1960, petitioner mailed to respondent an amended return for 1955 purporting to be a joint return for petitioner and his wife. Section 6013(a) of the 1954 Code provides that a husband and wife may make a joint income tax return even though one of the spouses has neither gross income nor deductions, with certain exceptions not applicable here. *105 Section 6013(b)(1) provides that, except as provided in paragraph (2), if spouses have filed separate returns for a year for which a joint return could have been filed, and the time prescribed for filing a return for the year has expired, the spouses may nevertheless make a joint return for such taxable year - and a joint return filed by the spouses under this subsection shall constitute the return of the husband and wife for such taxable year. Section 6013(b)(2) provides in part as follows: (2) Limitations for making of election. - The election provided for in paragraph (1) may not be made - (A) unless there is paid in full at or before the time of the filing of the joint return the amount shown as tax upon such joint return; or (B) after the expiration of 3 years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse); or (C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court of the United States within the time prescribed in section 6213; *106 * * * It is clear from the statutory language that the election to switch from a separate return to a joint return requires the actual filing of a joint return, and that the joint return may not be filed after the expiration of 3 years from the last date prescribed by law for filing the return for that year, without regard to extensions, and also may not be filed after the issuance of a notice of deficiency for that year. Petitioner runs afoul of both of these provisions. He did not actually file a joint return until more than 3 years after the 1955 return was due and until after the notice of deficiency for that year was issued. It is suggested by petitioner (1) that because there was no tax shown to be due on the original return, and, according to petitioner, the joint return provisions pertain only to the tax computation, no election to file a joint return could have been made when the original return for 1955 was filed; (2) that the waiver extending the time for assessing the tax and filing claim for refund should also extend the time for electing to switch to a joint return; and (3) that respondent cannot deny responsibility for the actions of his agent in advising petitioner *107 that it would not be necessary to file a joint return at a time when it would have come within the statute. We find no merit in any of these suggestions. Section 6013 grants the privilege to switch from a separate to a joint return only under the conditions prescribed therein. If those conditions are not met, as is the situation here, we know of no other provision of the law which would permit the election to file a joint return after a separate return has been filed and "under no circumstances could a revenue agent waive the statutory conditions under which an effective joint return could be filed." Constance B. Kirby, 35 T.C. 306 (1960). While it may be unfortunate if petitioner was misled by respondent's agent, this cannot affect our decision under the law, and, furthermore, petitioner's representative acknowledged that he knew the agent's report was subject to review and change. We hold for respondent on this issue. Decision will be entered under Rule 50. Footnotes
1. It appears that certain deficiencies in tax and additions to tax, other than for fraud, for the years here involved were assessed and paid prior to issuance of the notice of deficiency. See page 7, ante [Page 1166].
*. Amended return.↩
2. No explanation was given for the discrepancy between the $41,781.21 claimed as cost of goods sold on the original return for 1955 and the approximately $31,900 in expenses recorded on the books for that year.↩