**110**

Lloyd M. TUCKER, Special Agent, Internal Revenue Service,
Petitioner,

v.

Evelyn HUBNER, Respondent.

No. 1691–SD.

United States District Court,
S. D. California, S. D.

Feb. 17, 1955.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., Harry D. Steward, Asst. U. S. Atty., San Diego, Cal., for petitioner.

Robert W. Conyers and Sloane & Fisher, San Diego, Cal., for respondent.

HALL, District Judge.

This is a proceeding which is filed under the provisions of Section 7604 of the 1954 Internal Revenue Code,[1] seeking the enforcement by this court of a subpoena issued by the Internal Revenue Bureau under Section 7602[2] of that Code.

According to the face of the summons, the investigation concerns the tax liability of Clifford O. Boren and Delta M. Boren. The summons is directed to the respondent, Evelyn Hubner, requiring her to appear on November 29, 1954, before Lloyd M. Tucker, an internal revenue officer, and to bring the books and records of the partnership known as the Hubner Building Company, and the corporation known as the Hubner Building Company, relating to transactions had by that partnership with the said Clifford O. Boren and Delta M. Boren for the years 1950, 1951 and 1952, together with pay checks, invoices, correspondence, and any and all miscellaneous records, data and memoranda relating to the transactions between said partnership and the above-named taxpayers.

1. "§ 7604. Enforcement of summons
"(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.
"(b) Enforcement.—Whenever any person summoned under section 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience." (Formerly Sections 3633 (a) and 3615(e) of Title 26, U.S.C.A.).

2. "§ 7602. Examination of books and witnesses
"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—
"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry." (Formerly Sections 3614, 3615(a), (b), (c), and 3632(a) (1) of Title 26, U.S. C.A.).

The respondent appeared at the time and place set in summons, but declined to produce any of the books and records claiming that to do so would violate her right against self-incrimination under the Fifth Amendment. This proceeding followed.

The Fifth Amendment provides:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

Its prohibitions have been extended by judicial interpretation to reach beyond a criminal "case," so as to include almost every kind of a proceeding or act done under authority or color of authority wherein a person in answer to a question might give a fact which might lead to other evidence which might tend to connect that person with the commission of a crime. They are the so-called "rungs of a ladder" or "link in a chain" cases. Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170; Hoffman v. United States, 341 U.S. 479, 71 S. Ct. 814, 95 L.Ed. 1118; Greenberg v. United States, 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332; Singleton v. United States, 343 U.S. 944, 72 S.Ct. 1041, 96 L. Ed. 1349; United States v. Weisman, 2 Cir., 1940, 111 F.2d 260; Kasinowitz v. United States, 9 Cir., 1950, 181 F.2d 632; United States v. Coffey, 3 Cir., 1952, 198 F.2d 438.

The Third Circuit, in deciding the Coffey case, supra, commented on the Hoffman, Greenberg and Singleton cases, supra, and the Mason v. United States case, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198, and said [198 F.2d 440]:

"[2] Accordingly, we now have to reinterpret the Supreme Court's Hoffman opinion in the light of that Court's subsequent revelation that Hoffman proceeds on a theory broad enough to require the same result in the circumstances of Greenberg and Singleton. Specifically, we think the problem is what to do about apparently innocuous questions, the answers, to which are admittedly not incriminating in them-selves, when there are no additional facts before the Court which suggest particular connecting links through which the answer might lead to and might result in incrimination of the witness. We think the Supreme Court is saying that such facts are not necessary to the sustaining of the privilege. The decision in the Mason case would not be followed today. It is enough (1) that the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime against the United States, and (2) that this suggested course and scheme of linkage not seem incredible in the circumstances of the particular case."

Carried to the logical extreme, the doctrine of those cases would permit a witness to stand mute in response to any question, such as a query as to one's name or address, since a response could conceivably be a connecting link.

But I do not read the Constitution or the doctrine of the above cases as intending to completely paralyze the Government in its investigative functions. Certainly not under the facts in this case.

From the petition for attachment, the answer and the affidavits filed on both sides, it is apparent that the investigation being conducted by the Internal Revenue Bureau is not an investigation of the respondent Evelyn Hubner for any possible criminal liability, tax, or otherwise. It is an investigation directed to the affairs and possible tax liability and possible criminal liability of Clifford O. Boren and Delta M. Boren, both of whom are persons different than the respondent Evelyn Hubner, and neither of whom appears to have been an officer, director, employee or partner of either Hubner Company, corporation or partnership.

It appears that the Hubner Building Company was engaged in the building business. It was a corporation from

February 14, 1950, to September 30, 1950, at which time the Hubner Building Company was dissolved as a corporation and continued business as a partnership until the time of its dissolution on January 6, 1951. Its affairs, however, according to the affidavit, were not finally wound up until February 28, 1953.

The respondent, Beatrice Evelyn Hubner, is the surviving spouse of E. J. Hubner who died January 12, 1954, and who appears to have been the moving factor of the corporation, Hubner Construction Company, and one of the partners while it was a partnership. Respondent did not marry E. J. Hubner until May 23, 1952, after the dissolution of the partnership and after the dissolution of the corporation.

The books which are sought here are the books and records of the partnership and/or the corporation. It is quite apparent from the pleadings and affidavits filed here, that the respondent, Evelyn Hubner, is not and was not, either a stockholder, director, or officer of the corporation, or a partner of the partnership, or an employee of either.

Some claim is made that by virtue of a transfer of certain property known as the Big Oak Ranch by E. J. Hubner to the respondent in this case, which occurred in 1951 prior to the marriage, the respondent is fearful that the Government may make some additional tax claim arising out of the affairs of the Hubner Building Company or Hubner personally and, in connection therewith, attempt to pursue the property which was thus transferred to the respondent.

That is not a sufficient ground for the refusal to answer any questions or to present any records, even though the disclosures made might result in a civil proceeding against the respondent for the recovery of that property so transferred to her, to satisfy any tax liability which might be assessed against E. J. Hubner or the Hubner Building Company.

A civil proceeding attempting to enforce civil liability under the internal revenue statutes is not protected by the Constitutional guaranties of the Fifth Amendment,—Helvering v. Mitchell, 1938, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917.

Although not raised at the time of response to summons or in the answer filed to the petition, respondent in her brief relies upon the provisions of Section 7605(b) of the 1954 Internal Revenue Code (formerly 26 U.S.C.A. § 3631), which reads as follows:

"§ 7605. Time and place of examination

\* \* \* \* \* \*

"(b) Restrictions on examination of taxpayer.—No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

It is conceded by the government that the Internal Revenue Bureau conducted a previous examination of the books of both the corporation and partnership which resulted in additional assessments and refunds to the Hubner Company. Those books were examined with a view of determining only the liability of the Hubner Companies or E. J. Hubner, and were not examined with a view of determining the liability of the Borens or either of them.

The respondent in the brief relies largely upon the case of Martin v. Chandis Securities Co., 9 Cir., 1942, 128 F.2d 731.

In that case, while it did involve the enforcement of a subpoena and the examination of books and records in the hands of the Chandis Securities Company concerning the possible tax liability of a third person named Chandler, the court there stated that Section 3631 [now 7605(b)] of the Internal Revenue Code, limited the examinations of a tax-

payer's (the Boren's here) books to those which were *necessary*, and likewise was a limitation on the power of the Bureau to examine a third person's (respondent here) books only when such examination was shown to be *"necessary."*

However, upon an analysis of that case, it becomes quite evident that all that the Ninth Circuit held was that *where the statute of limitations on the face of the record had expired* against the taxpayer under investigation, an examination of the third person's books was *not necessary*. The examination was prohibited solely on that ground and not because there had been a prior examination.

There is no such element present in this case. The statute of limitations against the persons under investigation, the Borens, has not run, and if it has run, the Borens themselves have consented to an extension of time, having signed a consent extending the period of limitation upon assessment of income tax and profits tax. Therefore, the Chandis Securities case is not authority for the position taken by the respondent in this case.

Furthermore, the Chandis case would have another ground of distinction, as in that case they sought in the year of 1940 to compel the production of records from 1916 to 1930. No such a situation is present here. The records which are sought to be examined are the records for the years 1950, 1951 and 1952, which are not comparable to the attempt in the Chandis case to procure records that were many years old.

■ Moreover, as I view the provision of the Internal Revenue Code which prohibits the examination of books which are unnecessary, it becomes a question of fact to be decided in each case as to whether such examination is or is not necessary.

The facts in this case show that the Hubner Companies had considerable dealings with the Borens, and that there is a possible additional tax liability of the Borens in excess of $40,000 for the years 1950–1951; that the previous ex-

amination of the Hubner books indicated that a full audit of them in connection with the Boren investigation would produce facts bearing upon the possible liability or nonliability of the Borens. The presently requested examination is thus "necessary." I have examined the other authorities cited and relied on by respondent, and find that they are not in point.

■ The respondent makes the point that the procedural requirements of 7605 (b) were not complied with. The procedural requirement that a second or additional examination of a taxpayer's books can be made only at the taxpayer's request or on written notification of the Secretary, applies only to a second examination of the books of a taxpayer whose tax is in question. They do not apply to a case, such as here, where the books are those of a third person (Hubner) and not the books of the one whose tax is in question (The Borens). In such case the sole question which can be raised is necessity for the examination under the Chandis case, supra. Obviously the "taxpayer" referred to in Section 7605 (b) is the one whose return is under investigation. It does not mean a third party who, as here, in the final analysis is merely a witness having in her possession evidence concerning the possible tax liability of some other person or persons,

■ Respondent also contends that the provisions of the Fourth Amendment to the Constitution against unreasonable searches and seizures justifies her refusal to comply with the summons.

It is only *unreasonable* searches and seizures which are prohibited. In United States v. First National Bank of Mobile, D.C.Ala.1924, 295 F. 142, affirmed 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796, the bank refused to produce *its* books and records in response to a summons issued under the same provisions of the statute here involved, as they then existed. The inquiry was not concerning the bank's tax liability, but that of two individuals doing business with the bank. The court

held the Fourth Amendment not applicable. The records sought here are *not* the personal records of the respondent. She merely has possession of them. Congress has by statute, Int.Rev.Code 1954, § 7602, 26 U.S.C.A. authorized wide investigation and inquiry and it would completely frustrate the purposes of the statute if mere custodians of records could refuse to produce them in relation to investigation of the possible tax liability of another person.

The element of unreasonableness present in the Chandis case, supra, where numerous and burdensome records as much as 24 years old were sought is not present here; nor is there present the unreasonableness such as existed in First National Bank of Mobile v. United States, 5 Cir., 1947, 160 F.2d 532, where the appellate court held the summons unreasonable only insofar as it required the bank to examine over six million entries covering a five year period in order to comply.

The demands of the summons are not unreasonable under the facts of the case before the court.

Another ground is suggested—that the books here are not material to the investigation. I do not think that the respondent here is in any position to raise that question. Whether they are material or are not material is a question which can be raised by the party involved, namely, the Borens, if it can be raised at all, and I do not think it can be raised in this kind of a proceeding by the person who is not being investigated as the taxpayer.

The prayer of the petition ought to be, and is, granted.

Rather than commit the defendant to jail for contempt until she produces the books, perhaps a method can be worked out which would not be burdensome, either upon the respondent or upon the Government, and still, at the same time, would preserve to the respondent the records which she naturally wants to have preserved for whatever purpose she may desire or need them for herself or as administratrix of the estate of the deceased.

The United States Attorney will prepare findings of fact, conclusions of law, and order for my signature, granting the petition, committing the respondent to jail for contempt until she produces the books, which will be stayed until February 18, 1955, at 12:00 o'clock noon, and it will thereafter be permanently stayed if the respondent, prior thereto, deposits all of the books and records with the Clerk of this court, where they may remain for examination by both respondent, at her convenience, and the Internal Revenue Agents, at their convenience.