In The Matter of **FRANK FEHR BREW-ING CO., A Corporation, Debtor.**

No. 19515.

United States District Court
W. D. Kentucky,
Louisville Division.

March 5, 1958.

632

Oldham Clarke, Louisville, Ky., trustee, for Frank Fehr Brewing Co.

J. Leonard Walker, U. S. Atty., Louisville, Ky., for the United States.

SHELBOURNE, Chief Judge.

This case is before the Court for judgment as to whether income tax returns for the years 1948 to 1952 (both years inclusive), filed by the Frank Fehr Brewing Co., were sufficiently fraught with fraud so that an assessment of delinquent tax and fraud penalty made by the Commissioner on August 23, 1957, constitutes a valid assessment and, therefore, a valid claim against the Frank Fehr Brewing Co. The claim was filed pursuant to an order in the Bankruptcy Court, requiring all creditors to file claims.

As a defense to the claim of the Government for the tax, interest, and penalty, the Trustee, appointed in this Court on August 14, 1957, interposed the three-year statute of limitations, Section 275, Title 26 United States Code, 1952 Edition. The Government contends that, by Section 276, Title 26 United States Code, 1952 Edition, the three-year statute of limitations was tolled, because the return in each of the years 1948 through 1952 was fraudulent.

On January 27, 28, and 29, 1958, trial was had to this Court without a jury solely to determine this issue of fraud. Upon the signed stipulations of facts filed herein, the testimony heard by the Court, and the depositions, the Court makes the following findings of fact with respect only to the issue as to whether the income tax returns for the years 1948 through

1952 are barred by the three-year statute of limitations.

### Findings of Fact

1. Frank Fehr Brewing Co., is a Delaware corporation organized March 17, 1933; its brewery and offices at all times have been located at 412 Fehr Avenue in Louisville, Kentucky. It was authorized to issue 500,000 shares of preferred participating stock, par $1 each, amounting to $500,000, and 1,000,000 shares of common stock, par 50¢ each, amounting to $500,000. On August 14, 1957, when the Trustee herein was appointed, there was outstanding 397,917 shares of preferred stock owned by 1,673 shareholders, and 469,086 shares of common stock owned by 177 shareholders.

2. Frank Fehr owned approximately 185,000 shares of the common stock of the corporation from the date of its organization in 1933 to March 13, 1955.

3. Fehr Kremer owned approximately 121,000 shares of the common stock of the corporation from November 14, 1946 to February 18, 1955. Prior to October 5, 1949, Elizabeth Fehr Kremer owned approximately 159,000 shares of common stock, which from said last named date to March 14, 1955. The Louisville Trust Company and Fehr Kremer held as trustees for Elizabeth Fehr Kremer.

4. The directors of Frank Fehr Brewing Co., from April 22, 1947 to June 2, 1953, were as follows: Frank Fehr, Fehr Kremer, and John Marshall, Jr., elected by the holders of common stock; John S. Petot, Sr., and Wm. H. Crutcher, Jr., elected by holders of preferred stock. From June 2, 1953 to December 31, 1954, the directors remained as listed, except that Wm. H. Crutcher, Jr., was replaced by Robert W. Marshall on September 28, 1954.

5. Officers of the corporation from April 29, 1947 to July 8, 1953, were as follows: Frank Fehr, President; Fehr Kremer, Executive Vice President, Director of Sales and Advertising; John S. Petot, Sr., Treasurer. Mr. Kremer was secretary until September 26, 1950, when Armfield H. Hammond, Jr., was elected secretary.

6. Arlie Chastain was comptroller and chief bookkeeper for the corporation from 1935 to 1955; since 1955, Edward F. Reiss has kept the books of the corporation. John S. Petot, Sr., a certified public accountant who has engaged in the practice of his profession in Louisville for many years, was a member of the board of directors and treasurer of the corporation from 1939 to March 30, 1955. During this period, Mr. Petot was authorized to countersign checks and he did countersign checks issued by the corporation. From 1935 to 1955, checks on the bank accounts of the corporation were usually prepared and signed by Mr. Chastain, and it was required that all checks be signed by any two of the following officers: Fehr, Kremer, Chastain, and Petot.

7. From 1934 to date, except during the year 1953, the accounting firm of Escott, Grogan & Co., advised the corporation with reference to accounting matters, and made annual audits of the books and records of the corporation. Said accounting firm prepared all tax returns for the corporation for all years since 1934, and all tax returns for Colonel Fehr for all years since 1945. Mr. Petot prepared all tax returns for Fehr Kremer for the years 1948 through 1951, and Escott, Grogan & Co., prepared all tax returns for Mr. Kremer for the years 1952 to the present time. For the year 1953, Lybrand, Ross Bros., and Montgomery prepared the annual audit of the corporation, however, Escott, Grogan & Co., prepared the corporation's tax return for 1953, as stated above.

8. The corporation's federal income tax return for the calendar year 1948 was filed on March 15, 1949, showing taxable income of $1,007,363.30, and tax due in the amount of $382,798.05, which was paid by the corporation. An examination was made in 1950, by Revenue Agent Charley L. Parks, whose report of examination was dated September 5, 1950, showing a deficiency of $4,962.47, which was paid by the corporation.

9. The corporation's federal income tax return for the calendar year 1949 was filed on March 15, 1950, showing taxable income of $1,181,780.83, and tax due in the amount of $449,076.72, which was paid by the corporation. An examination was made in 1951, by Revenue Agent J. W. Carter, whose report of examination was dated March 7, 1951, showing a deficiency of $3,404.15, which was paid by the corporation.

10. The corporation's federal income tax return for the calendar year 1950 was filed on May 15, 1951, showing taxable income of $771,347.86, and tax due in the amount of $319,063.10, which was paid by the corporation. An examination was made in 1953, by Revenue Agent J. W. Carter, whose report of examination was dated May 15, 1953, showing a deficiency of $15,576.91, which was paid by the corporation.

11. The corporation's federal income tax return for the calendar year 1951 was filed on June 15, 1952, showing taxable income of $544,257.90, and tax due in the amount of $270,710.88, which was paid by the corporation. An examination was made in 1953, by Revenue Agent J. W. Carter, whose report of examination was dated May 15, 1953, showing a deficiency of $4,789.49, which was paid by the corporation.

12. The corporation's federal income tax return for the year 1952 was filed on May 28, 1953, showing taxable income of $231,809.51, and tax due in the amount of $115,040.95, which was paid by the corporation. On March 31, 1954, the corporation received a refund of $115,040.95, due to a loss carry-back from the year 1953 to the year 1952.

13. The returns filed by the corporation for each of the tax years 1948 through 1952 contained deductions for personal expenses of Col. Frank Fehr and his wife and of Fehr Kremer and his family; the bookkeeping entries on the records of the corporation, for the most part, merely showed these expenses as office traveling expense or expense of the corporation. It was shown by the testimony of the comptroller, Mr. Chastain, that in many instances Colonel Fehr would, either personally or by telephone or telegram, request the issuance of checks for substantial amounts of money; the face amounts of the checks, with no supporting voucher or explanation, appeared in the books of the corporation, but were reflected only as traveling, advertising, office, or other expense of the corporation.

In each of these tax years, substantial amounts were paid by the corporation to the Madrid Garage for the upkeep and storage of a Cadillac and a Lincoln automobile furnished to Col. and Mrs. Frank Fehr. Likewise, checks were issued by the corporation in each of the tax years for the expenses of Colonel Fehr and his wife to Florida.

In each of the tax years, Fehr Kremer frequently ate his meals at the Brown Hotel, alone or with members of his family, which were charged as expense of the corporation.

In 1949, the expenses of Fehr Kremer, his wife, his daughter and son-in-law on a trip to Florida were charged as expense of the corporation. In the same year, a television set for Col. Frank Fehr was deducted as a corporation expense.

In 1950, a substantial amount was deducted by the corporation ostensibly for expenses of Fehr Kremer and his wife while attending a week-long convention in Philadelphia, but Mr. Kremer attended the convention only one day and his wife did not attend at any time; they spent that week at the Waldorf-Astoria Hotel in New York City with their expenses charged to the corporation as business, traveling, or advertising expense.

In 1951, meals eaten by Colonel Fehr and his wife at the Brown Hotel were deducted as corporation expense; as was the salary of Paul Brooks, who accompanied them as chauffeur on their Florida trip, and the salary of Reed Terrill, a personal servant to Colonel Fehr and Mrs. Fehr. In the same year there was charged to the corporation and deducted on its tax return the cost of a rowing

machine for Fehr Kremer, which was installed in his home.

In 1952, Paul Brooks and Coleman Thomas were employed as servants of Colonel Fehr and Mrs. Fehr; although their salaries were paid by the corporation, they rendered no service to the corporation.

There was no denial on the part of either Colonel Fehr or Mr. Kremer that these items were paid as reflected by the books of the corporation. It is apparent from Mr. Kremer's testimony that, in his opinion, they were legitimate expenses for advertising, creating good will, and in furtherance of the interests of the corporation. However, it cannot be denied that he at all times knew there had been no recorded authorization for the expenditure of any such amounts by him. It is conclusively to be inferred that he knew at all times that the books of the corporation did not reflect these expenses, as the facts would have compelled them under ordinary requirements of bookkeeping and auditing.

On each of the trips to Florida, extensive entertainment was charged as expense to the corporation, but these occasions were not attended by customers, or prospective customers, or suppliers of materials to the corporation. Mr. Kremer's explanation of such expenses incurred by him was that he was endeavoring to develop the friendship and good will of influential people in Louisville, who were vacationing in Florida just as he was.

The Court finds as a fact that, in causing these amounts to be expended for the personal benefit of Col. and Mrs. Frank Fehr and of Fehr Kremer and his family, Colonel Fehr and Mr. Kremer each had knowledge that the corporation had not by any resolution or minutes in its records authorized such expenses, and that the records of the corporation did not show that the amounts were actually expended for the purposes for which they both now admit they were expended. They each had this knowledge when the tax returns were made; the comptroller, Mr. Chastain, had this knowledge when he signed the tax returns for each of the years in question.

14. It is found by the Court as a fact that the tax returns of the corporation for each of the years in question were fraudulent.

15. It is fair to add that the directors of the corporation are shown to have known of these expenditures and the purposes for which they were allowed, and to have approved same. The fraud, however, was in no wise lessened by this knowledge on the part of the directors. The fraud lay in the representation to the Government that these amounts constituted office, travel, or advertising expenses and were, therefore, legitimate deductions when, in truth and in fact, they were not.

### Conclusions of Law

1. Considerable stress, by the Trustee in oral argument and in brief, is laid upon the case of Spies v. U. S., 317 U.S. 492, 63 S.Ct. 364, 368, 87 L.Ed. 418, which was a criminal case. In the opinion, by way of illustrating what would constitute fraud within the purview of Section 145(b) of Title 26, defining as a felony a willful attempt to defeat and evade tax, Justice Jackson said, "(A)ffirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal."

In the case of White v. U. S., D.C., 20 F.Supp. 623, 625, in an opinion by Judge Elwood Hamilton, this Court said, "Some courts hold the rule that a fraud penalty cannot be imposed on the taxpayer unless the facts would also support a criminal prosecution. I do not so view the act here in question. If there has been deliberate suppression of vital facts in the return, which is misleading, it is a fraud,

and the misrepresentation will support fraud penalties if made recklessly without knowledge, or if so carelessly done as to lead a trier of facts to believe that the person on whom the duty rests to disclose has knowingly or intentionally failed to do what the law requires."

The Supreme Court, in the case of Helvering v. Mitchell, 303 U.S. 391, 402, 58 S.Ct. 630, 634, 82 L.Ed. 917, makes the same distinction. The Court there said, "Civil procedure is incompatible with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions, and where civil procedure is prescribed for the enforcement of remedial sanctions, those rules and guaranties do not apply.

2. The intention of the corporate officers signing and filing the returns for the tax years in question must be inferred from the acts of the parties and such inferences as arise from all of their acts. Their intention is a question of fact to be determined from all of the circumstances. Battjes v. U. S., 6 Cir., 172 F.2d 1.

The intention of the corporation is determined by the knowledge and intent of the corporate officers who signed and caused the returns to be filed. Currier v. U. S., 1 Cir., 166 F.2d 346.

Conclusion

In conclusion, the Court finds from the testimony in this case that the corporate officers who signed and caused these returns to be filed knew that the deduction of substantial amounts claimed in the returns as office, traveling, and advertising expenses in fact represented expenditures for the personal benefit of Col. Frank Fehr and Fehr Kremer and their families, and would not and could not properly be considered as expenses of the corporation.

In cases of this kind, the law casts upon the Commissioner the burden of showing by clear and convincing evidence the fraud claimed by the Commissioner to have tolled the statute of limitations. Drieborg v. Commissioner, 6 Cir.,

225 F.2d 216; Rogers v. Commissioner, 6 Cir., 111 F.2d 987; Hawkins v. Commissioner, 6 Cir., 234 F.2d 359; Wiseley v. Commissioner, 6 Cir., 185 F.2d 263.

The Commissioner has carried the burden of showing by clear and convincing evidence that the corporation's federal income tax returns in each of the years 1948 through 1952 (both years inclusive) contained deductions which were in no wise deductible as proper or necessary business expenses. They were fraudulently claimed.

The fraud tolled the three-year statute of limitations.

An appropriate judgment in keeping with these conclusions will be tendered, upon notice, by the Government.