Kenneth E. and Violet F. VANDER LINDEN, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 79–319–E.

United States District Court, S. D. Iowa, C. D.

Dec. 15, 1980.

Drew R. Tillotson, Des Moines, Iowa, for plaintiffs.

Mary Frances Clark, Dept. of Justice, Washington, D. C., for defendant.

## ORDER

O'BRIEN, District Judge.

## PRELIMINARY STATEMENT

The matter before the Court is plaintiffs' motion to suppress certain evidence obtained by the Internal Revenue Service (IRS) and to quash the tax assessments of income tax, civil fraud penalties and interest based upon said evidence. Specifically, the issue before the Court is whether the United States Government can now use, as the basis for tax assessments and civil fraud penalties, evidence which this Court has previously found was obtained from an illegal search and seizure and which, as a consequence, was previously suppressed by an Order dated July 6, 1976 entered by Judge Stuart in the related criminal case of *United States v. Vander Linden,* Criminal No. 76–29 (S.D.Iowa 1976). The Court held an oral hearing on plaintiffs' motions and thereafter the parties filed proposed findings of fact and conclusions of law. After fully considering this matter, the Court sustains plaintiffs' motion to suppress and, at this point in time, denies plaintiffs' motion to quash the tax assessment.

## FINDINGS OF FACT

1. This is a civil action for refund of taxes and fraud penalties assessed against Kenneth E. Vander Linden and Violet F. Vander Linden for the tax years 1969, 1970 and 1971.

2. The Vander Lindens have moved to suppress information obtained from Kenneth E. Vander Linden and third parties during an audit of the Vander Lindens' 1970 and 1971 tax years by Revenue Agent Les Kavan. The information they are seeking to suppress includes bank statements and bank deposit slips, real estate contracts and leases, copies of sales tax returns and income tax returns, and summaries and analyses which were prepared by the Internal Revenue Service. (Plaintiffs' Motion to Suppress, ¶ 7, Exh. A.)

3. During 1972, several governmental agencies concerned with illegal drug traffic cooperated in a joint endeavor known as the Narcotics Traffickers Project (NTP) which operated primarily out of the IRS. NTP's objective was to bring criminal tax law violations against those individuals suspected of illegal drug trafficking but who were effectively insulated from street level drug activity; in other words, the program was aimed at middle and upper echelon drug traffickers. In carrying out this objective, the intelligence division of the IRS initiated inquiries of law enforcement and other state and local governmental units in an attempt to isolate possible suspects for NTP investigation.

4. A similar program, Drug Abuse Law Enforcement (DALE), in which the IRS also participated, operated a task force directed toward street level sales of drugs. Revenue agents in the audit (civil) division of the IRS who participated in DALE were given information concerning drugs and given the opportunity to volunteer to cooperate with DALE by being alert for drug activities as they conducted audits of particular taxpayers.

5. In June of 1972, based upon information obtained from a local law enforcement agency, Special Agent James Nichols of the IRS intelligence division prepared and sent to NTP headquarters in Washington, D.C. an "intelligence information item" outlining the information he had obtained which might establish Kenneth E. Vander Linden as a possible target for further investigation under the NTP program. On August 28, 1972, Vander Linden was rejected as a possible target for further investigation under the NTP program and the case was referred to the audit division from the intelligence division on December 8, 1972.

6. However, the intelligence division, in connection with the DALE program, retained an interest in the case. It was not clear whether control of the matter after December 8, 1972 rested within the audit division or the intelligence division in St. Louis, Kansas City or Des Moines. In any event, Revenue Agent Lester Kavan, who had taken DALE training, was assigned the case in February, 1973. He initially contacted Vander Linden in March 1973 to arrange an audit of Vander Linden's 1971 tax return. Kavan at that time knew the case had been chosen additionally for investigation under the DALE program. Kavan was asked to be alert for suspicious activities in or around the business premises of the Vander Lindens which would indicate a source of unreported income. (Defendant's Memorandum in Opposition, Affidavit of Les Kavan.)

7. Approximately one month after the assignment, Agent Kavan contacted Mr. Vander Linden, and informed him that he would be auditing his 1971 tax returns. He arranged to examine the books and records used in preparing the returns. Agent Kavan visited Mr. Vander Linden's place of business on March 6, 7, 8, 9, and 12, and on each occasion, Mr. Vander Linden provided his records. (*Id.*)

8. Later in March, Agent Kavan informally discussed his audit with the Chief of the Examination Division and the Chief and a Group Supervisor from the Criminal Intelligence Division. As a result of the discussion, the Examination Division approved an audit of the 1970 tax year to check the possibility of omitted income. (*Id.*)

9. After informing Mr. Vander Linden that he would be auditing the earlier year, Agent Kavan again visited Mr. Vander Linden's place of business, and Mr. Vander Linden again provided his tax records. (*Id.*)

10. Agent Kavan discovered several bank statements from a previously undisclosed bank account. After attempting to determine whether the deposits in the account had a reported source, he referred the case to the Criminal Intelligence Division on May 4, 1973, for an investigation of potential criminal violations. (*Id.*)

11. On March 25, 1976, Kenneth E. Vander Linden was indicted on three counts of tax evasion, in violation of § 7201 of the Internal Revenue Code of 1954 (26 U.S.C.), concerning the 1969, 1970 and 1971 tax years. During that criminal proceeding, Mr. Vander Linden moved to suppress all information which he had provided to a Revenue Agent as well as any information derived therefrom. *United States v. Vander Linden*, Cr. No. 76–29, S.D.Iowa).

12. The Court takes judicial notice of the order suppressing evidence in *United States v. Vander Linden*, Cr. No. 76–29 (S.D.Iowa 1976), in which the court found that Kenneth E. Vander Linden had provided information for a civil audit of his tax returns. The Court stated that the true purpose of Revenue Agent Kavan's examination was "investigating civil and/or criminal income tax charges based on unreported income from illegal drug activities and attempting to uncover drug-related activi-

ties." While the records had been obtained from Mr. Vander Linden with his consent, the court ruled, his consent was not free and voluntary since he lacked knowledge of the true purpose. Therefore, the Court concluded, Mr. Vander Linden's consent to production of the records "was fraudulently induced from a misrepresentation of the true nature of the inquiry", in violation of the Fourth Amendment.

13. Based on the same evidence which was suppressed pursuant to the previous Order of this Court, dated July 6, 1976, the IRS, on October 16, 1978, asserted against the plaintiffs income tax deficiencies for the tax years 1969, 1970 and 1971 totaling $44,951.00 plus interest of $21,711.17 and civil fraud penalties imposed by § 6653(b) of $23,042.01, which income tax deficiencies, interest and penalties were in the total amount of $89,704.18. On October 25, 1978, plaintiffs paid in full to the IRS said deficiencies in tax and penalties plus accrued interest. On or about December 11, 1978, plaintiffs timely filed with the Midwest Service Center, Kansas City, Missouri, claims for refunds totaling $79,937.30 plus interest as provided by law. On March 7, 1979, the IRS mailed to the plaintiffs by certified mail a Notice of Disallowance, stating that their claims for refund for the tax years 1969, 1970 and 1971 were disallowed.

14. On July 16, 1979, plaintiffs filed a complaint in the United States District Court for the Southern District of Iowa, Central Division, alleging that the actions of the United States, through its agent, in assessing and collecting the tax deficiencies plus interest and penalties and in disallowing the claims for refund were improper, illegal and erroneous. On May 23, 1980, plaintiffs filed a motion seeking suppression of the evidence upon which the assessments of income tax, civil fraud penalties and interest were based and to quash such assessments.

15. The audit of Vander Linden's income tax return for the year 1971 was initiated in cooperation with DALE for the purpose of investigating civil and/or criminal income tax charges based on unreported income from alleged illegal drug activities and attempting to uncover drug related activities.

16. In the Court's opinion, the true purpose for the investigation of Vander Linden was concealed from him. Such was the conclusion of Judge Stuart in the previous related criminal action and the Government has given no indication that this was anything but the correct determination.

17. Vander Linden's consent to the inspection of his records was not freely and voluntarily given because he lacked the requisite knowledge.

18. Vander Linden's consent to allow the IRS to examine his records was fraudulently induced from a misrepresentation of the true nature of the inquiry.

## CONCLUSIONS OF LAW

■ As previously mentioned, the issue before the Court is whether the United States Government can now use as the basis for tax assessments and civil fraud penalties evidence which this Court has previously found was obtained from an illegal search and seizure and which, as a consequence, was previously suppressed. The Court concludes as a matter of law that such evidence may not now be used in this matter. The Court has previously found that Vander Linden's Fourth Amendment rights were violated since Mr. Vander Linden's consent to have his records examined for the tax years in question was fraudulently induced by a misrepresentation of the true nature of the inquiry. Accordingly, such evidence was suppressed in the criminal tax case. On a number of occasions the United States Supreme Court has stated that the purpose of the exclusionary rule is to safeguard Fourth Amendment rights by deterring future and unlawful police conduct. *See United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The Court in *Calandra* at 348, 94 S.Ct. at 620 stated:

> Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally

seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.

The issue before the Court based on the authorities given to the Court by the parties has apparently not been resolved by the United States Supreme Court. For that reason, it is necessary for this Court to rely upon what case precedent there is in resolving this matter. The case which gives this Court great guidance is *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). In *Janis*, the Court allowed evidence which had been suppressed in a state court proceeding to be admitted in a federal court proceeding. The Court held the judicially-created exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign (there the federal government) of evidence illegally seized by a criminal law enforcement agent of another sovereign (there the state government), since the likelihood of deterring law enforcement conduct through such a rule is not sufficient to outweigh the societal costs imposed by the exclusion. *Janis* at pp. 443–460, 96 S.Ct. at pp. 3026–3034. The facts of the matter now before the Court are distinguishable from those in *Janis* in that the facts of this matter involve "intrasovereign" violations while in *Janis* the situation concerned an "intersovereign" situation. The Court in *Janis* did recognize without criticizing a line of cases which suppressed illegally obtained evidence wherein the officer committing the unconstitutional search or seizure was an agent of the sovereign that sought to use the evidence. *See Janis* at 455, n. 32, 96 S.Ct. at 3033, n. 32.[1]

The Court believes that the United States Supreme Court in *Janis* decided not to exclude the illegally obtained evidence from the federal court proceeding because the "deterrent effect" on state law officials would be minimal in a federal trial. This Court is of the opinion that the "deterrent effect" in an "intrasovereign" situation would be furthered by excluding illegally obtained evidence in subsequent civil trial proceedings. As stated in *Janis* at 446, 96 S.Ct. at 3028, "the 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.' " (citations omitted).

The Court also said the "debate within the Court on the exclusionary rule has been a warm one . . . ." *Id.*

This Court, too, has found this to be a close question; however, it concludes that the "prime purpose" of the exclusionary rule, of deterring future unlawful police conduct, would be served by excluding from trial this illegally obtained evidence. This is true because in the present case there exists not only an intrasovereign situation, but also a situation where revenue agents and special agents regularly work closely together, sharing information and working jointly on cases, particularly on special projects such as DALE. Also in the case at hand, the officer who committed the unconstitutional search and seizure is the same officer who is now using the evidence so obtained. Therefore this is not only an intrasovereign situation but is actually the same division of the IRS that committed the illegal search and seizure that is now seeking to utilize evidence obtained by the illegal search and seizure.

■ Although this Court is of the opinion that the illegally obtained evidence should be suppressed in this matter, the Court is not of the opinion that suppression automatically means the tax assessment should be quashed. Plaintiffs argue that an assessment, if based upon evidence properly excludable, is "naked" and arbitrary and, as a consequence, totally void. *See Janis* at 441–42, 96 S.Ct. at 3025–3026. However, the Court notes that in *Janis* it was stated that "in pretrial proceedings, it was agreed that the 'sole basis of the computation of

---

1. Plaintiffs rely on two of these cases. These cases are *Pizzarello v. United States*, 408 F.2d 579 (2d Cir. 1969); *United States v. Blank*, 261 F.Supp. 180 (N.D.Ohio 1966). These cases lend further support for the conclusions reached herein.

the civil tax assessment ... was ... the items obtained pursuant to the search warrant ... and the information furnished to [the revenue agent] by Officer Weissman with respect to the duration of [respondent's] alleged wagering activities.'" Unlike the matter in *Janis*, there has been no agreement by the parties that the sole basis of the tax assessment in this matter was the result of the illegally-obtained evidence. Furthermore, the plaintiffs in their brief state that the taxpayer's claims for refund are based "either totally or essentially totally" upon the evidence sought to be suppressed. From this, the Court is of the opinion that there is the possibility that other evidence may exist which could support the tax assessment, and therefore defendant should be given the opportunity to unearth such evidence if it does exist. The Government has argued that it should be given an opportunity to establish its case through the use of evidence not suppressed. The Court is unaware of what other evidence may exist.

The Court realizes that it may be contended that any evidence defendant secures is tainted in that said evidence may have been discovered as a result of the illegal search and seizure involved in this matter. However, at this juncture in the case, the Court is unable to ascertain what evidence may be discovered and without knowing what evidence and from what sources the evidence may come, the Court is unable to conclude that such evidence is tainted. Accordingly, as this case proceeds, the Court upon proper motion shall re-examine the evidence, if any, in light of the motion.

■ One reason for the Court's allowing the defendant to proceed to discovery is the case of *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), which held "a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the Government, albeit by evidence that has been illegally obtained that is inadmissible on the Government's direct case, or otherwise, as substantive evidence of guilt." If the Government can secure evidence which is not tainted by the result of the illegal search and seizure, then the evidence suppressed by this order may be used by the defendant on cross-examination to impeach the plaintiffs only if the suppressed evidence contradicts a particular statement made by plaintiffs in the course of their direct examination.

In the event the defendant is unable to secure evidence by independent means, thereby being unable to prove fraud by clear and convincing evidence, such assessments will be totally void since the statute of limitations expired prior to the assessment herein. The Court shall take up this matter after defendant is given an opportunity to ascertain whether or not admissible evidence can be secured.

For all the foregoing reasons,

IT IS HEREBY ORDERED that plaintiffs' motion to suppress evidence is hereby sustained.

IT IS FURTHER ORDERED that plaintiffs' motion to quash assessments is at this time overruled.

IT IS FURTHER ORDERED that the defendant shall be given an opportunity to ascertain and secure evidence, if any, which has not been tainted by the illegal search and seizure involved in this matter.