BLACK FORGE, INC., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 13138–81—13140–81.     Filed June 14, 1982.

---

[1]Cases of the following petitioners are consolidated herewith: Raymond C. Lovell and Shirley Lee Lovell, docket No. 13139–81; Inner Corp., docket No. 13140–81.

*John E. Cicero II, William Rambaum,* and *John E. Lund,* for the petitioners.
*Thomas K. Purcell,* for the respondent.

SIMPSON, *Judge*: This case is before us on the petitioners' motion to suppress evidence on the ground that their Fourth Amendment rights were violated during the search in which such evidence was obtained. The issue for decision is whether the evidence is admissible in this case even though such search was illegal.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioner, Black Forge, Inc., is a Florida corporation. At the time it filed its petition in this case, it maintained its office in Tampa, Fla. The petitioners, Raymond C. and Shirley Lee Lovell, husband and wife, were legal residents of Speedway, Ind., at the time they filed their petition in this case. The

---

[2]The Circuit Court of the Sixth Judicial Circuit (Pinellas County) of the State of Florida has ruled that the warrant authorizing such search was valid and that the search did not violate the petitioners' constitutional rights. However, that decision is on appeal, and the Supreme Court of Florida has not ruled on the validity of the warrant. Since that issue is still pending before the Florida courts, we decided that it would be inappropriate for this Court to consider the issue at this time, and accordingly, we decided to restrict our consideration to the issue of whether the evidence is admissible in this case even if the search is ultimately held to have been improper.

petitioner, Inner Corp., is a Florida corporation. At the time it filed its petition in this case, it maintained its office in St. Petersburg, Fla.

In January 1978, a special agent with the Criminal Investigation Division (CID) of the Internal Revenue Service, Tampa, Fla., received a telephone call from an officer at the St. Petersburg, Fla., Police Department, in which the officer informed the agent that his department had obtained evidence concerning Mr. and Mrs. Lovell that might be of interest to the IRS. As a result of such telephone call, Special Agents John L. Pitcher, Jr., and Ruth M. Lovell[3] met with officers of the St. Petersburg Police Department. At that time, the agents were offered 2½ months of theater receipts which the police had obtained from a dumpster located in the apartment complex in the St. Petersburg area where Mr. and Mrs. Lovell then resided. Such records were subsequently obtained by Agent Lovell.

On January 23, 1978, CID opened a case development file on Mr. and Mrs. Lovell, thereby allowing CID to collect, receive, and retain information on the Lovells. Such file was assigned to Agent Lovell, who subsequently examined certain public records to secure information about the Lovells. In February 1978, Agents Pitcher and Lovell were invited to and met with representatives of the law enforcement agencies in Pinellas County: the Clearwater Police Department, the St. Petersburg Police Department, the Pinellas County sheriff's office, and the office of the State attorney for the sixth judicial circuit. The purpose of such meeting was to discuss general strategy concerning the investigation of Mr. and Mrs. Lovell by the various local agencies. The special agents made no contribution to such meeting, and they attended merely as a courtesy to the local agencies, since such agencies had at times furnished information to the IRS. Although it was generally understood that the agencies would keep each other apprised of further developments, there was no specific agreement that either the St. Petersburg Police Department or the office of the State attorney would turn over information to the IRS. Subsequent to the meeting, the individual in charge of the

---

[3] In time, Agent Lovell was removed from the case because of the mere coincidence that she had the same surname as the individual petitioners.

investigation for the office of the State attorney, Charles A. Meyers, had no further contact with the IRS until June 1979. Also, subsequent to the meeting, Agent Lovell made no further contacts with representatives of the St. Petersburg Police Department or the office of the State attorney.

In August 1978, the case development file on Mr. and Mrs. Lovell was transferred to Special Agent Craig L. Waldon. Prior to that time, Agent Lovell had determined that the records retrieved from the dumpster constituted sufficient evidence to support a deficiency determination for civil tax purposes, but that such records were insufficient to support a criminal investigation. She recommended that the criminal investigation be closed and that the file be transferred to the Audit Division. However, no action was taken on her recommendation at that time.

After he was assigned the case development file, Agent Waldon contacted, on one or two occasions, an officer of the St. Petersburg Police Department. The purpose of such contacts was to determine what information the police department had concerning Mr. and Mrs. Lovell. Agent Waldon was allowed to examine the police department's files, and he asked that the department contact him if additional information became available. However, there was no formal agreement between the IRS and the St. Petersburg Police Department for the exchange of information, and any information given to the IRS was given voluntarily. Subsequently, Agent Waldon concluded that he had insufficient information for a criminal tax investigation, and because he considered State prosecution likely, he recommended closing the criminal investigation and transferring the file to the Examination Division to determine whether there was a civil tax liability. On March 23, 1979, CID closed its file and transferred the information received from the local law enforcement agencies to the Examination Division. After such transfer, Agent Waldon's involvement ended.

In April 1979, the civil examination was assigned to Revenue Agent James R. Flack of the St. Petersburg branch of the Examination Division. Prior to May 22, 1979, he made no contacts outside the IRS concerning the petitioners; specifically, he did not contact any of the local law enforcement agencies.

On May 22, 1979, a search warrant was issued by the Sixth Judicial Circuit Court of Florida authorizing a search of the residence of Mr. and Mrs. Lovell in St. Petersburg. Such warrant authorized a search for and seizure of any records, papers, or other documents pertaining to the businesses known as Inner Corp. (d.b.a. Four Seasons Health Studio), Black Forge, Inc., Forge Investments, Inc., and Bailey Theater, Inc. (d.b.a. 34th Street Adult Theatre). The search warrant and the supporting affidavit were drafted by an attorney in the State attorney's office, based on information supplied by investigators in that office, Charles A. Meyers and Scott Hopkins. Mr. Meyers and Mr. Hopkins were the affiants for the warrant. Such affidavit alleged that the petitioners were violating the prostitution laws and the Florida Racketeer Influenced and Corrupt Organization (RICO) Act.[4] Mr. Meyers and Mr. Hopkins relied on the advice of their legal staff as to the adequacy of their application for the warrant. Neither Mr. Meyers nor Mr. Hopkins knowingly or intentionally withheld any information from the attorney who drafted the affidavit and the warrant or from the circuit court judge who issued the warrant. Mr. Hopkins executed the warrant on May 22, 1979; also present at the search were Mr. Meyers and representatives of the St. Petersburg Police Department. In executing the warrant and seizing the evidence, Mr. Meyers and Mr. Hopkins relied in good faith on the search warrant issued by the circuit court.

Shortly after the search and the arrest of Mr. and Mrs. Lovell, Agent Flack read newspaper articles concerning their arrest and the search. He made copies of such articles and placed them in his examination file. Prior to reading such articles, neither he nor Agents Lovell and Waldon were aware of the search or had any knowledge that a warrant would be requested by the State attorney's office and that a search would be conducted. Prior to the search, none of such agents had discussed with the local law enforcement officials what information the IRS would need if a search were conducted. Also, neither Mr. Meyers nor Mr. Hopkins, who were in charge of the investigation of the petitioners, had contacted officials of

[4]Fla. Stat. Ann. secs. 895.01–895–08 (1982).

the IRS after the meeting in February 1978 and prior to the search, nor had any Federal official requested them to search for or to seize business or financial records of the petitioners.

On June 1, 1979, and again on June 6, 1979, Mr. Meyers contacted CID concerning the evidence seized from Mr. and Mrs. Lovell's residence. His reason for contacting CID was that he was aware that the IRS had an interest in the petitioners, and he thought the business records seized would be of interest to them. Such contact was at his initiative and was purely voluntary; neither Mr. Meyers nor Mr. Hopkins had any formal or informal agreement with the IRS to turn over information to it or to search and seize evidence concerning the petitioners.

On June 15, 1979, Agent Flack met with Mr. Meyers, who arranged for him to have access to the records seized during the search. Such records were then in the custody of the St. Petersburg Police Department. All the information from the search was made available to Agent Flack, and he was allowed to, and did, make and retain copies of such information. In addition, he was provided with synopses of depositions taken by the State attorney's office concerning the financial operation of the massage parlor allegedly operated by the petitioners. Prior to June 15, 1979, Agent Flack had no contact with the State attorney's office.

By letter dated June 19, 1979, Mr. and Mrs. Lovell were informed that Agent Flack had been assigned to examine their Federal income tax returns for 1976 through 1978. In April 1980, Agent Flack submitted the cases involving Mr. and Mrs. Lovell to CID for criminal investigation and for consideration of an addition to tax under section 6653(b) of the Internal Revenue Code of 1954.[5] Such referral was rejected by CID because of the likelihood of prosecution under local law. Based on the records obtained in the search and the records retrieved from the dumpster, Agent Flack determined deficiencies in the petitioners' Federal income taxes for 1976, 1977, and 1978. Also, he determined additions to tax under section 6653(b) for fraud. The Commissioner sent the petitioners notices of deficiencies and additions to tax.

---

[5]All statutory references are to the Internal Revenue Code of 1954 as in effect during 1976 through 1978, unless otherwise indicated.

OPINION

The issue for decision is whether the so-called exclusionary rule[6] is applicable to this case so as to exclude the records obtained during the search of Mr. and Mrs. Lovell's residence. The petitioners contend that there was substantial Federal involvement with the local law enforcement officials in the entire investigation, that there existed a prior agreement to provide agents of the IRS with any evidence obtained by the local officials, and that those officials conducted the search with the knowledge that any evidence obtained would be used for a civil tax assessment as well as in a criminal trial. Therefore, the petitioners argue that this case is distinguishable from *United States v. Janis*, 428 U.S. 433 (1976). Also, the petitioners contend that because of the additions to tax for fraud determined by the Commissioner, this case is not solely a civil case, but is penal or quasi-criminal in nature; for this additional reason, they argue that *Janis* is not controlling.

In *Janis*, the local police obtained a warrant to search for bookmaking paraphernalia. The taxpayer, Mr. Janis, was arrested and records of the gambling operation were seized. After the search and seizure, a local police officer voluntarily informed the IRS of the arrest of Mr. Janis and assisted the IRS in analyzing the seized records. Subsequently, a State court found that the warrant had been issued improperly and that the evidence obtained in the search had been obtained in violation of the Fourth Amendment. Consequently, the State court granted Mr. Janis's motion to suppress the evidence in the State proceedings which had been commenced against him.

In the subsequent civil tax proceeding, the lower courts held that the local police had violated Mr. Janis's Fourth Amendment rights and that the exclusionary rule required the evidence obtained in the search to be suppressed in the Federal tax proceeding. The Supreme Court reversed the lower courts. It held that evidence seized by a State criminal law enforcement officer in good faith, albeit unconstitutional-

---

[6]See *United States v. Janis*, 428 U.S. 433 (1976); *United States v. Calandra*, 414 U.S. 338 (1974); *Mapp v. Ohio*, 367 U.S. 643 (1961); *Elkins v. United States*, 364 U.S. 206 (1960); *Weeks v. United States*, 232 U.S. 383 (1914); *Guzzetta v. Commissioner*, 78 T.C. 173 (1982).

ly, is admissible in a civil proceeding by or against the United States.

The Court stated that "the 'prime purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.' " 428 U.S. at 446. The Court found that the exclusion of evidence in Federal civil trials, in addition to excluding the evidence in State and Federal criminal trials, "is unlikely to provide significant, much less substantial, additional deterrence" on State officials. 428 U.S. at 458. Thus, the Court found that excluding evidence obtained as a result of an unconstitutional search and seizure from a Federal civil proceeding would have only a marginal deterrent effect on the State and local police, since enforcing an individual's Federal civil liberties is "outside the offending officer's zone of primary interest." 428 U.S. at 458. Consequently, the Court held that the:

exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion. This Court, therefore, is not justified in so extending the exclusionary rule. [428 U.S. at 454; fn. ref. omitted.]

The Court's holding was premised on the assumption that there was no Federal participation in the unconstitutional search and seizure. 428 U.S. at 455 n. 31. The Court specifically did not decide the issue of whether the exclusionary rule should be applied in a civil proceeding involving an intrasovereign violation, rather than an intersovereign violation. In its holding, the Court stated that:

respondent [Mr. Janis] does not critically distinguish between those cases in which the officer committing the unconstitutional search or seizure was an agent of the sovereign that sought to use the evidence, on the one hand, and those cases, such as the present one, on the other hand, *where the officer has no responsibility or duty to, or agreement with, the sovereign seeking to use the evidence.* [428 U.S. at 455; emphasis added; fn. ref. omitted.]

Although the petitioners sought to show that there was, in essence, an intrasovereign violation of their rights in this case, we cannot conclude from the record that there was Federal involvement with the search, or that there existed a prior agreement between the local law enforcement officials and the agents of the IRS. We have found as a fact that the search was conducted by the local law enforcement officials in good-faith

reliance on the validity of the warrant. While it is true that the local law enforcement officials were certainly aware that the IRS was interested in the petitioners, the record shows that there was no Federal participation in the decision to seek the warrant or in the planning or the conduct of the search. Compare the facts of *Lustig v. United States*, 338 U.S. 74 (1949); *Byars v. United States*, 273 U.S. 28 (1927); *Vander Linden v. United States*, 502 F. Supp. 693 (S.D. Iowa 1980). The uncontroverted testimony of Mr. Meyers, Mr. Hopkins, Special Agents Lovell and Waldon, and Revenue Agent Flack was that no prior agreement existed between the IRS and the local officials and that the agents of the IRS were not even aware that a search was to be conducted, much less participated in it. Also, such testimony showed that the decision to turn over to the IRS the records obtained in the search was initiated by Mr. Meyers and was purely voluntary. Thus, we find that the facts of this case are substantively indistinguishable from *Janis* and from our recent decision in *Guzzetta v. Commissioner*, 78 T.C. 173 (1982), in which we held that the exclusionary rule was not applicable. See also *Breen v. United States*, an unreported case (N.D. Ga. 1981, 49 AFTR 2d 82–772, 82–1 USTC par. 9132). Here, as in those cases, the exclusion of the evidence secured by the search conducted by the local officials would serve virtually no deterrent effect, and any advantage to be gained by the exclusion of such evidence is manifestly outweighed by the public gain that may result from the use of such evidence. Hence, we find and hold that there was insufficient Federal involvement in the search and seizure to result in an intra-sovereign violation, and that therefore *Janis* is controlling.

In addition, there is no merit in the argument of the petitioners that *Janis* is not controlling because this proceeding is penal or quasi-criminal in nature since the Commissioner has determined that the petitioners are liable for additions to tax under section 6653(b). They contend that such additions to tax are the equivalent of a forfeiture, and that the exclusionary rule is therefore applicable in such a proceeding. See *United States v. Janis*, 428 U.S. at 447 n. 17. A forfeiture is a penalty for a criminal offense. *United States v. Janis*, 428 U.S. at 447 n. 17. It is true that when the Commissioner seeks to collect the addition to tax for fraud, he has the burden of proof, and he must prove fraud by clear and convincing

evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. Nevertheless, it has long been held that the sanction imposed by section 6653(b) is an addition to tax, not a penalty, and is civil rather than criminal in nature. Its purpose is primarily to protect the revenue and to reimburse the Government for the heavy expense of investigation and loss resulting from a taxpayer's fraud. *Helvering v. Mitchell,* 303 U.S. 391, 401–402, 405 (1938); *Walker v. United States,* 240 F.2d 601, 603–604 (5th Cir. 1957); *Lee v. Commissioner,* 227 F.2d 181, 183 (5th Cir. 1955), affg. a Memorandum Opinion of this Court; *Harper v. Commissioner,* 54 T.C. 1121, 1138–1139 (1970). Thus, in a civil case, even though the Commissioner claims the addition to tax for fraud, the taxpayer is not entitled to the safeguards of a criminal case: he is not entitled to a jury trial; he has no right to be confronted with the witnesses against him; his guilt need not be proved beyond a reasonable doubt; there is no protection against double jeopardy; and the Government may appeal adverse decisions. *Helvering v. Mitchell, supra* at 402–404; see *Spies v. United States,* 317 U.S. 492, 495 (1943); *Henry v. Commissioner,* 362 F.2d 640, 643 (5th Cir. 1966), affg. a Memorandum Opinion of this Court; *Kenney v. Commissioner,* 111 F.2d 374, 375–376 (5th Cir. 1940), affg. a Memorandum Opinion of this Court; *Alexander v. Commissioner,* 56 T.C. 710, 715 (1970), affd. per curiam 476 F.2d 974 (5th Cir. 1973); *In re Frank Fehr Brewing Co.,* 160 F. Supp. 631, 636 (W.D. Ky. 1958); *Tucker v. Hubner,* 129 F. Supp. 110, 113 (S.D. Cal. 1955); Rule 142(b), Tax Court Rules of Practice and Procedure.

In deciding whether to apply the exclusionary rule in a civil fraud case, we see no reason for treating such a case any differently from other civil tax cases. The ultimate question is whether the application of the exclusionary rule would serve a substantial deterrent effect, and in answering that question, there is no reason to draw a distinction between civil fraud cases and other civil tax cases. Consequently, even if the search was in violation of the petitioners' Fourth Amendment rights, the exclusionary rule is not applicable in this case, and there is no reason to shift the burden of proof.

*An appropriate order will be issued.*