Anthony Guzzetta, Petitioner v. Commissioner of
Internal Revenue, Respondent

Docket No. 1855-78.    Filed February 2, 1982.

*Murray Appleman*, for the petitioner.
*Bradford A. Johnson*, for the respondent.

Nims, *Judge*: This case is before us on petitioner's motion to
suppress evidence on the grounds that his Fourth Amendment
rights were violated during the search in which the evidence
was obtained.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation and
the attached exhibits are incorporated herein by reference.

Petitioner resided in Yonkers, N.Y., at the time the petition
in this case was filed.

During the early part of 1973, petitioner was the subject of
police surveillance during an investigation into a purported
illegal gambling operation. On March 29, 1973, pursuant to a
warrant, a force, composed of New York City Police officers, a
New York State Police officer, and a Westchester County
District Attorney official, arrested petitioner and searched the
automobile he was driving and his home.

During the search the police officials seized some records
and other items as evidence of the purported gambling
activity. Federal officials did not participate in the investiga-
tion, arrest, search, or seizure.

Subsequent to the search, a member of the New York City
Police Department (hereafter NYPD) notified the Internal
Revenue Service (hereafter IRS) of petitioner's arrest. The
NYPD also transferred certain evidence of petitioner's illegal
gambling activities to the IRS. Among other things, the NYPD
transferred to the IRS copies of petitioner's bank statements

which were seized in petitioner's home. Respondent now seeks to use these statements as evidence that petitioner failed to report all of his income.

The above-mentioned transfer of information was made pursuant to a "select liaison" relationship between the NYPD and the IRS. The liaison had been established prior to the surveillance and search which is the focus of this case. The purpose of the liaison, according to the testimony of Anthony J. Lombardi, an IRS employee and former supervisor of the "Intelligence Gathering" group for the IRS in New York, was "to establish a vehicle for us [the IRS] to obtain information relevant to potential tax crimes."

The liaison was strictly one way in rapport. The NYPD transferred files which they had created in investigating State criminal violations. The NYPD transferred only those files which it, in its discretion, wanted to transfer to the IRS. There was no preexisting agreement that the NYPD would transfer information such as that involved in this case or that the NYPD would transfer any information at all. Also, the IRS gave nothing to the NYPD in exchange for the information it received from the police department.

Following the transfer of information concerning petitioner, the IRS commenced its own investigation which led to this case. Respondent determined in his statutory notice of deficiency that petitioner had unreported income for the years 1968 to 1974, inclusive. Respondent also determined that petitioner was liable for several additions to tax stemming from this failure to report.

On August 22, 1973, the County Court of Westchester County, N.Y., granted petitioner's motion in his State gambling trial to suppress certain evidence seized during the search. The court granted petitioner's motion because it found that the warrant authorizing the search was not based on probable cause. The record contains no evidence that the officers conducted the search and seizure in bad faith.

OPINION

Petitioner moves in this case to suppress certain evidence

which he claims was obtained in violation of his Fourth Amendment rights.[1] The Supreme Court's holding in *United States v. Janis*, 428 U.S. 433 (1976), requires admission of the evidence in this case.[2] But following *Janis* requires us to reconsider a prior decision of this Court: *Suarez v. Commissioner*, 58 T.C. 792 (1972) (a Court-reviewed opinion).

The issue for decision is the applicability of the so-called exclusionary rule. The exclusionary rule, in some situations, requires that evidence obtained in violation of the Fourth Amendment be excluded from judicial proceedings. Compare *Weeks v. United States*, 232 U.S. 383 (1914); *Elkins v. United States*, 364 U.S. 206 (1960); and *Mapp v. Ohio*, 367 U.S. 643 (1961); with *United States v. Calandra*, 414 U.S. 338 (1974); and *United States v. Janis, supra.*

---

[1]The Fourth Amendment states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2]In this case, petitioner failed to present enough evidence for us to make an independent inquiry to determine if petitioner's Fourth Amendment rights were violated. He claims that the warrant authorizing the search was not based on probable cause. We cannot adequately address this argument because the warrant and the affidavit on which the warrant is based are not in evidence. Also, the New York court's decision on this issue does not bind us in this case. *Tirado v. Commissioner*, 74 T.C. 14 (1980); *Suarez v. Commissioner*, 58 T.C. 792 (1972).

In view of the foregoing and our decision concerning the exclusionary rule (discussed subsequently), we do not in any event reach the question of whether petitioner's Fourth Amendment rights were violated. This approach is not inconsistent with our prior decisions which reserved judgment on other exclusionary rule issues. See *Tirado v. Commissioner, supra*; *Proesel v. Commissioner*, 73 T.C. 600 (1979). The exclusionary rule issues in those cases were different from the issue facing us today. *Tirado* presented an "intrasovereign" Fourth Amendment violation. In *United States v. Janis*, 428 U.S. 433, 456 (1976), the Supreme Court indicated that an "intrasovereign" violation may be treated differently than the "intersovereign" violations presented in *Janis* and in this case. We do not decide today whether the exclusionary rule applies in Federal civil tax cases in which an intrasovereign violation occurred.

*Proesel* presented a situation in which the taxpayer claimed that the exclusionary rule should be applied in his case even though a third party's, not his, Fourth Amendment rights had been violated. After the *Proesel* decision, the Supreme Court, in *United States v. Payner*, 447 U.S. 727 (1980), held that the exclusionary rule is not applicable in a proceeding when a nonparty's constitutional rights had been violated.

In contrast to the situation facing us in *Tirado* and *Proesel*, we have clear authority which determines the result of the exclusionary rule issue in this case. The relevant facts here are indistinguishable from *United States v. Janis, supra*. In following *Janis* we are here holding that the evidence is admissible whether or not it was obtained by the New York Police Department in an illegal search and seizure, so long as there was no participation or collaboration by or with Federal authorities. Therefore, we do not have to decide the constitutional issue concerning the existence of probable cause for the warrant.

In the *Janis* case, the Supreme Court considered a case which is very similar to the one currently before us. In *Janis*, Los Angeles police obtained a warrant to search for bookmaking paraphernalia. The taxpayer, Janis, was arrested and certain real evidence of the gambling operation was seized.

After the search and seizure, a member of the Los Angeles police force informed the IRS that Janis had been arrested for bookmaking activity. The Los Angeles police assisted the IRS in analyzing the taxpayer's gambling records. The taxpayer had not filed a Federal wagering tax return for the period during which his alleged bookmaking activities occurred. Based exclusively on the information obtained from the Los Angeles police, the IRS assessed Janis for wagering taxes due under section 4401.[3] The IRS then exercised its authority under section 6331 to levy on an amount of money which had been seized in the search. The levy partially satisfied the assessment.

After the assessment and the levy, charges were filed in State court against Janis for violating the local gambling laws. Janis moved in the State trial to suppress the evidence obtained as a result of the search and seizure on the ground that the magistrate who issued the warrant did not have enough information to determine independently the reliability of the informant whose tip formed the basis for the warrant. Citing *Spinelli v. United States*, 393 U.S. 410 (1969), the State court determined that the evidence had been obtained in violation of the Fourth Amendment and granted Janis' motion to suppress.

Janis later initiated a refund suit in U.S. District Court to recover the funds levied on and seized by the IRS. The United States counterclaimed for the unpaid balance of the assessment. Janis moved to suppress the evidence obtained from the search. The District Court determined that the Los Angeles police had violated Janis' Fourth Amendment rights in obtaining the evidence. The court held that the exclusionary rule required suppression of the illegally obtained evidence in the Federal tax proceeding. *Janis v. United States*, an unreported case (C.D. Cal. 1973, 31 AFTR 2d 73–1049, 73–1 USTC

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the year in question.

par. 16,083). The Ninth Circuit Court of Appeals affirmed by an unpublished order dated July 22, 1974.

In reversing the lower courts, the Supreme Court squarely held that evidence seized by a State criminal law enforcement officer in good faith, but nonetheless unconstitutionally, is admissible in a civil proceeding by or against the United States. In doing so the Court observed that the exclusionary rule is a—

judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved * * * . As with any remedial device, the application of the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served. [428 U.S. at 446–447, citing *United States v. Calandra*, 414 U.S. 338, 348 (1974).]

"The prime purpose of the rule, if not the sole one," stated the Court, "is to deter future unlawful police conduct." *United States v. Janis, supra* at 446.[4]

In *Janis*, where Federal agents did not participate in the search and seizure, the Supreme Court examined the exclusionary rule's deterrent effect on only the State police officials who conducted the illegal search. In determining whether to apply the exclusionary rule in this situation, the Court balanced (1) the deterrent effect on State police induced by suppressing the evidence in a Federal civil proceeding, with (2) the societal cost of excluding relevant and reliable evidence from the trial.

The Court found that the deterrent effect on State criminal enforcement officers brought about by excluding evidence in Federal civil trials in addition to excluding the evidence in State and Federal criminal trials[5] "is unlikely to provide significant, much less substantial, additional deterrence." Exclusion of the evidence in a Federal civil proceeding would have only a marginal deterrent effect on the State police

---

[4]The Court had previously stated that considerations of judicial integrity provide another purpose for the exclusionary rule. See *Mapp v. Ohio*, 367 U.S. 643, 659 (1961). See note 6 *infra*.

[5]See *Mapp v. Ohio, supra* (evidence obtained by State police officers in violation of the Fourth Amendment excluded from State criminal trial); *Elkins v. United States*, 364 U.S. 206 (1960) (evidence obtained by State police officers in violation of the Fourth Amendment excluded from Federal criminal trial).

because enforcing a suspect's Federal civil liabilities "falls outside the offending officer's zone of primary interest." *United States v. Janis, supra* at 458. Consequently, the Court held that—

exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the state police so that it outweighs the societal costs imposed by the exclusion. This Court, therefore, is not justified in so extending the exclusionary rule. [428 U.S. at 454.][6]

We think that the Supreme Court's holding in *United States v. Janis*, 428 U.S. 433 (1976), determines the result in this case because the relevant facts of the two cases are indistinguishable.

In both cases the Federal Government sought to use evidence in a Federal civil tax case. In both cases the evidence had been obtained by local police officers in their investigation of alleged illegal gambling activities. In both cases a search

---

[6]The Court also considered in a footnote whether concepts of judicial integrity, assuming such concepts remain relevant in an exclusionary rule inquiry, would require a different result. The Court stated:

"To the extent that recent cases state that deterrence is the prime purpose of the exclusionary rule, and that 'judicial integrity' is a relevant, albeit subordinate factor, we hold that in this case considerations of judicial integrity do not require exclusion of the evidence.

"Judicial integrity clearly does not mean that the courts must never admit evidence obtained in violation of the Fourth Amendment. The requirement that a defendant must have standing to make a motion to suppress demonstrates as much. See *Alderman v. United States*, 394 U.S. 165 (1969).

"The primary meaning of 'judicial integrity' in the context of evidentiary rules is that the courts must not commit or encourage violations of the Constitution. In the Fourth Amendment area, however, the evidence is unquestionably accurate, and the violation is complete by the time the evidence is presented to the court. See *United States v. Calandra*, 414 U.S., at 347, 354. The focus therefore must be on the question whether the admission of the evidence encourages violations of Fourth Amendment rights. As the Court has noted in recent cases, this inquiry is essentially the same as the inquiry into whether exclusion would serve a deterrent purpose. See *United States v. Peltier*, 422 U.S., at 538; *Michigan v. Tucker*, 417 U.S., at 450 n.25. The analysis showing that exclusion in this case has no demonstrated deterrent effect and is unlikely to have any significant such effect shows, by the same reasoning, that the admission of the evidence is unlikely to encourage violations of the Fourth Amendment. The admission of evidence in a federal civil proceeding is simply not important enough to state criminal law enforcement officers to encourage them to violate Fourth Amendment rights (and thus to obtain evidence that they are unable to use in either state or federal criminal proceedings). In addition, the officers here were clearly acting in good faith, see n. 1, *supra*, a factor that the Court has recognized reduces significantly the potential deterrent effect of exclusion. See *Michigan v. Tucker*, 417 U.S., at 447; *United States v. Peltier*, 422 U.S., at 539."

[428 U.S. at 458–459 n. 35.]

and seizure was later determined by a State court to be constitutionally deficient. In both cases the offending officers conducted the search and seizure in good faith. It follows, therefore, that the evidence obtained in connection with the search should be admitted in this case.

The fact that the taxpayer in *Janis* was engaged in a wagering tax dispute and that the taxpayer here is engaged in an income tax dispute is irrelevant for purposes of determining the scope of the exclusionary rule. In both situations the taxpayer is involved in a Federal civil dispute the result of which is "outside the offending officer's zone of primary interest." *United States v. Janis, supra* at 458. In other words, the deterrent effect on the local police officers caused by excluding evidence in a Federal wagering tax case or in a Federal income tax case is minimal in both cases.

Also, the fact that *Janis* commenced as a refund case in a District Court while this case is a Tax Court proceeding is irrelevant in determining the applicability of the exclusionary rule. In both situations the proceeding is before a Federal tribunal pitting the taxpayer against the Federal Government.[7] The deterrent effect on local police officers is equally remote if evidence is excluded in either of these situations.

Petitioner tries to distinguish *Janis* on the ground that the Federal Government was involved in this search and seizure whereas it was not involved in the *Janis* case. Petitioner identifies language in the *Janis* opinion which implies that proof of Federal participation in the search and seizure might have produced a different result in that case. In *Janis*, the Supreme Court stated:

> Respondent [the taxpayer] argues, however, that the application of the exclusionary rule to civil proceedings long has been recognized in the federal courts. He cites a number of cases. But respondent does not critically distinguish between those cases in which the officer committing the unconstitutional search or seizure was an agent of the sovereign that sought to use the evidence, on the one hand, and those cases, such as the present one, on the other hand, where the officer has no responsibility or duty to, or agreement with, the sovereign seeking to use the evidence.[31] [428 U.S. at 455; fn. ref. omitted.]

---

[7] In fact, the Government's counterclaim against Janis placed those parties virtually in an identical posture to the position of the parties in this case.

In n. 31, the Supreme Court stated:

The decision by the District Court to suppress the evidence did not rest upon any finding of such an agreement or participation, and from the record it does not appear that any "federal participation" existed. See *Lustig v. United States*, 338 U.S. 74 (1949); *Byars v. United States*, 273 U.S. 28 (1927). As stated above in n.3, we decide the present case on the assumption that no such agreement or arrangement existed. Respondent remains free on remand to attempt to prove that there was federal participation in fact. If he succeeds in that proof, he raises the question, not presented by this case, whether the exclusionary rule is to be applied in a civil proceeding involving an intrasovereign violation.

It is well established, of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act. See *Burdeau v. McDowell*, 256 U.S. 465 (1921); *United States v. Stonehill, supra.* [428 U.S. at 455–456 n. 31.]

In other words, if Federal participation in the search and seizure is proved, then an intrasovereign violation is presented and the *Janis* rule concerning intersovergin violations may not be applicable. These statements by the *Janis* Court, however, do not help petitioner in this case because he failed to show that Federal participation existed in the search and seizure. No Federal officials participated in the planning and execution of the search and seizure. In fact, the Federal Government had no knowledge of petitioner's alleged gambling activities and the IRS had demonstrated no interest in investigating his income tax liability prior to receipt of the information from the NYPD. Contrast *Lustig v. United States*, 338 U.S. 74 (1949), and *Byars v. United States*, 273 U.S. 28 (1927).

The only basis for establishing Federal participation, therefore, is the liaison which existed between the IRS and the NYPD. On the facts presented in this record we find that the NYPD was not operating as an agent of the Federal Government, nor did the NYPD have "responsibility or duty to, or agreement with" the Federal Government which now seeks to use the evidence. *United States v. Janis, supra* at 455. The liaison imposed no obligation on the NYPD to transfer tax related information. No agreement existed that the NYPD would transfer any information at all or that the IRS would do anything in exchange for receiving such information. Instead, the liaison merely provided a means through which the NYPD could transfer information to the IRS if, at any time, the police

department, in its discretion, decided to open its files to the IRS.[8] The discretionary nature of the NYPD transfers and the absence of active Federal involvement in the planning and execution of the search and seizure convince us that there was no Federal involvement.

Also, the information transfer in this case is very similar to the assistance which the Los Angeles police gave the IRS in *United States v. Janis, supra.* In that case the Supreme Court concluded, on the record before it, that there was no Federal participation in the search and seizure. As in this case, there was no active participation by Federal officials in the planning and execution of the *Janis* search and seizure. As in this case, a State police officer in *Janis* transferred information to the IRS.[9] As in this case, the information transfer in *Janis* occurred in the officer's discretion as there was no obligation or agreement to transfer information to the IRS. Also, in *Janis*

---

[8]In fact, the choice of the files transferred to the IRS implies that the NYPD was not itself interested in enforcing Federal income tax liabilities. The following exchange took place at trial during the cross-examination of Mr. Lombardi:

A.   * * * When we went to the Police Department we did not specifically ask for tax related information. We don't have to depend on the Police Department to make that determination. That's why we employ agents that are knowledgeable in taxes.

What they do for us is very simple. They give us files. I do not know at that given time if the file contains tax related information.

Q.  Did they give you files pertaining to burglaries, robberies, murders?

A.  Absolutely.

Q.  They gave you files pertaining to robberies, burglaries and—

A.  That's what I want to point out. There would be files obviously that would have no tax bearing at all. My job would be to basically to take a look at the file to see if there was any tax related information. They would give us a file on a particular individual that possibly committed a burglary. There would be no tax ramifications.

The NYPD's role in helping the IRS was limited to allowing the IRS to sometimes look at the department's files which it had created in the course of performing its primary objective: enforcing the State criminal law.

[9]The Los Angeles police in *United States v. Janis, supra*, gave more assistance to the IRS than the New York police gave to the IRS in this case. In *Janis*, the police officers notified the IRS of the Max Janis gambling arrest and transferred some records evidencing the gambling operation. This assistance is just what occurred in this case. In *Janis*, though, the police officer also used his expertise to help the IRS crack the code in which some of the gambling records were written. *United States v. Janis, supra* at 436. The Supreme Court concluded in *Janis* that provision of such assistance has an insufficient connection to justify the conclusion that there had been Federal participation. The Court, however, left open for further consideration upon remand the question of whether additional Federal assistance, if any, had occurred and whether such assistance would constitute Federal participation. We hold that no such Federal participation existed in this case where there was less joint enterprise between the IRS and the NYPD than there was in *Janis*.

as in this case, information probably was transferred to the IRS on a more or less regular basis.[10] The Supreme Court concluded on the record before it that there was insufficient Federal participation in the search and seizure to generate an intrasovereign violation. We reach the same conclusion in this case.

Accordingly, the *Janis* rule concerning intersovereign violations applies in this case. The evidence obtained from the search and seizure is admissible.

In *Suarez v. Commissioner*, 58 T.C. 792 (1972) (a Court-reviewed opinion), the taxpayer, inter alia, asked this Court to suppress evidence obtained by Florida police officers[11] in connection with a raid on a clinic conducting illegal abortions. We found that the Florida police obtained the evidence in violation of the taxpayer's Fourth Amendment rights. We held that the exclusionary rule applied to require suppression of the illegally obtained evidence in the Tax Court proceeding.

In our *Suarez* decision we observed that the Supreme Court had not decided whether the exclusionary rule applied in civil tax cases.[12] In the absence of a prior Supreme Court case which

---

[10]The Los Angeles police officer who transferred the information to the IRS stated as follows in a deposition:

Q. Now, Sergeant Weissman, is it police department policy to call the Internal Revenue Service when you have taken a substantial sum of cash related to a bookmaking arrest?

A. I don't think that there's policy either way. I just - I did it as a matter of - I wouldn't say it was policy. I did it as a matter of police procedure.

In other words, here's a person that was involved in a crime that had this kind of money, and I thought of Internal Revenue.

Q. Do you do that on a regular basis?

A. I don't do it on what I would consider a small-size book, but I considered this one a major-size book. So, I, therefore, did it.

Q. Would you do that with every major-size book that you run across with a substantial amount of cash?

A. I probably would.

*United States v. Janis, supra* at 462–463 (Stewart, J., dissenting).

[11]In *Suarez v. Commissioner*, 58 T.C. 792 (1972), we found that there was no Federal participation in the raid. 58 T.C. at 806 n. 11.

[12]In *Suarez v. Commissioner, supra*, we said:

"Thus far, the high court has not faced the exact issue presented herein. But it has repeatedly stated that the [exclusionary] rule's purpose is to deter unconstitutional conduct, and its prior opinions, as well as decisions by other Federal courts, clearly delineate the path we should follow. [58 T.C. at 802.]"

was on point, we relied on a series of criminal cases,[13] civil cases with criminal overtones or involving forfeitures,[14] and civil cases involving intrasovereign violations of the Fourth Amendment,[15] to support our decision that the exclusionary rule should apply in *Suarez*. Although we recognized the societal costs involved in excluding evidence from such proceedings, we decided that the illegally obtained evidence should be excluded in Tax Court cases because the costs of exclusion were lower in civil tax cases than in criminal cases in which exclusion was the rule. We made no attempt to balance the costs of exclusion in civil tax cases with the additional deterrent effect induced by excluding evidence from such proceedings.[16]

The taxpayer in *United States v. Janis, supra*, cited our decision in *Suarez v. Commissioner, supra*, to support his contention that the exclusionary rule applies generally in civil tax proceedings. The Supreme Court, after reviewing the

---

[13]We cited, among other cases, *Elkins v. United States*, 364 U.S. 206 (1960); *Weeks v. United States*, 232 U.S. 383 (1914).

[14]We cited, among other cases, *See v. City of Seattle*, 387 U.S. 541 (1967); *United States v. Blank*, 261 F. Supp. 180 (N.D. Ohio 1966).

[15]We cited, among other cases, *Pizzarello v. United States*, 408 F.2d 579 (2d Cir. 1969).

[16]In *Suarez v. Commissioner, supra*, we said:

"We are not unmindful of the competing considerations involved in applying the protection of the fourth amendment. See Amsterdam, 'Search, Seizure, and Section 2255: A Comment,' 112 U. of Pa. L. Rev. 378, 388–389 (1964). But, the language of the fourth amendment itself admits of no distinction between searches and seizures in the context of a criminal case and those made in the context of a civil case. Indeed, it speaks in terms of the proscribed conduct without any apparent regard to the motivations for such conduct or the use of the fruits thereof. * * *

"The costs to society of applying the exclusionary rule in civil tax cases are substantially less than the criminal area where the rule is well established. Surely the lesser objective of civil tax collection should not be accorded preferential treatment over the greater objective of convicting the guilty criminal. Moreover, we cannot ignore the additional factor that the integrity of the judicial process is also at stake. See *Mapp v. Ohio*, 367 U.S. 643, 659, 660 (1961); *Elkins v. United States*, 364 U.S. 206, 222 (1960).

"In view of the foregoing, we conclude that any competing consideration based upon the need for effective enforcement of civil tax liabilities (compare *Elkins v. United States, supra* at 222) must give way to the higher goal of protection of the individual and the necessity for preserving confidence in, rather than encouraging contempt for, the processes of Government. * * *

   *     *     *     *     *     *     *

"We hold that, as a matter of law, the protective rule of the fourth amendment which excludes evidence illegally obtained is applicable in a civil tax case."

[58 T.C. at 805–806; fn. refs. omitted.]

*Suarez* case, disagreed with the taxpayer. The Supreme Court, after quoting a portion of the *Suarez* holding, stated:

We disagree with the broad implications of this statement of the Tax Court [the *Suarez* holding] for two reasons. To the extent that the court did not focus on the deterrent purpose of the exclusionary rule, the law has since been clarified [citation omitted]. Moreover, the court did not distinguish between intersovereign and intrasovereign uses of unconstitutionally seized material. [428 U.S. at 457.][17]

As discussed previously, in *Janis*, the Supreme Court held that evidence illegally obtained by State police officers is admissible in a Federal tax proceeding.

Unlike the situation facing us in *Suarez v. Commissioner, supra*, we today have a Supreme Court case addressing the issue before us. In situations involving intersovereign violations of the Fourth Amendment, such as the case now before us, *United States v. Janis, supra*, controls. To the extent that *Suarez* is inconsistent with *Janis* with respect to the application of the exclusionary rule, we will no longer follow our prior decision.

Petitioner's motion to suppress is denied.[18]

*An appropriate order will be entered.*

---

[17]The Supreme Court in *Janis* also disagreed with the Tax Court's conclusion in *Suarez v. Commissioner, supra*, that considerations of judicial integrity required exclusion of the illegally obtained evidence in the Federal tax proceeding. See note 6 *supra*.

[18]In his pretrial memorandum, petitioner made a Fifth Amendment argument based on *United States v. Haydel*, 486 F. Supp. 109 (M.D. La. 1980). Petitioner apparently abandoned this argument as it was not presented in his briefs. We note, however, that *Haydel* is inapposite in this case. The *Haydel* case held that the Fifth Amendment prohibited the use of records required to be kept by sec. 4424 as evidence in nontax criminal cases. Records required by tax law can be used as evidence in civil or criminal tax cases. *United States v. Haydel*, 649 F.2d 1152 (5th Cir. 1981) (not deciding whether such records may be used in a nontax criminal trial). Petitioner's reliance on the District Court decision in *Haydel* is misplaced in this civil tax case.