# United States Tax Court

T.C. Summary Opinion 2023-8

ALBERTO DELGADO AND VIRGINIA DELGADO,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 13919-19S.                                  Filed March 13, 2023.

————

*Oscar Javier Ornelas*, for petitioners.

*David Sohn* and *Sheila R. Pattison*, for respondent.

## SUMMARY OPINION

HALPERN, *Judge*:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent issued a Statutory Notice of Deficiency (Statutory Notice) to petitioners determining a deficiency in, and an accuracy-related penalty with respect to, their 2016 income tax of $5,795 and $1,159, respectively.  Petitioners assigned error to the determinations of both the deficiency in tax and the penalty.  Respondent has conceded the

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

penalty, which concession we accept. For the reasons set forth below, we sustain the deficiency in tax.

## Background

The parties have filed a First Stipulation of Facts stipulating certain facts and the authenticity of certain documents. The facts stipulated are found, and the documents stipulated are accepted as authentic. The parties have filed a Supplemental Stipulation of Facts stipulating one additional exhibit, Exhibit 7–R, which comprises a written declaration (Shanahan Declaration) of Kaaren Shanahan, identified as an employee of respondent's, and a "Note Transcript" from the Internal Revenue Service (IRS) Automated Under Reporter (AUR) program. For reasons discussed *infra* note 8, we do not receive into evidence either the Shanahan Declaration or the Note Transcript.

Neither party called any witnesses or proffered documents beyond those stipulated. We need to find few facts beyond those stipulated. We set forth those facts pertinent to our discussion.

### Petitioners' 2016 Return

Petitioners timely filed IRS Form 1040, U.S. Individual Income Tax Return, for their 2016 (calendar) tax year (2016 Return).

Petitioner husband (Mr. Delgado) worked for Walgreen Co. (Walgreen) in 2016. For 2016, Mr. Delgado received two tax information returns from Walgreen. One, an IRS Form W–2, Wage and Tax Statement, reported $8,437 of wages paid to him, and the second, an IRS Form 1099–MISC, Miscellaneous Income, reported $49,062 of "other income" paid to him. Walgreen also reported to respondent the information on those two information returns. Petitioners included on the 2016 Return the $8,437 reported to them on the Form W–2 but not the $49,062 reported to them on the Form 1099–MISC.

Petitioners claimed education credits of $2,000 and a child tax credit of $1,000 on the 2016 Return.

### Respondent's AUR Program

#### May CP 2000 Notice

The 2016 Return drew notice under the AUR program, and, on May 7, 2018, respondent sent petitioners a Notice CP 2000 (May CP

2000 Notice), which is a notice sent to a taxpayer when the taxpayer's return information does not match data reported to the IRS by employers, banks, and other third parties. Table 1 in the May CP 2000 Notice, titled "Changes to your 2016 Return," shows the following among other things.

*Table 1*

| Changes to your 2016 Return | | | |
|---|---|---|---|
| **Your income and deductions** | Shown on 2016 Return | As corrected by IRS | Difference |
| Other income | $0 | $49,062 | $49,062 |
| **Change to taxable income** | — | — | 49,062 |
| **Your tax computations** | Shown on 2016 Return | As corrected by IRS | Difference |
| Taxable income | $41,578 | $90,640 | $49,062 |
| Tax | 5,309 | 14,199 | 8,890 |
| Education credits | 2,000 | 0 | −2,000 |
| Child tax credit | 1,000 | 200 | −800 |
| Total tax | — | — | 11,690 |
| **Tax you owe** | — | — | $11,690 |

Table 2, under the heading "**Explanation of changes to your 2016 Form 1040**," shows the following.

*Table 2*

| Other Income | | | | | |
|---|---|---|---|---|---|
| Received from | Address | Account information | Shown on Return | Reported to IRS by others | Difference |
| WALGREEN CO. | . . . | SSN: . . . Form 1099–MISC | $0 | $49,062 | $49,062 |

Following Table 2 is a description of the reason why a portion of the child tax credit was disallowed (the credit was later allowed in full) and the reason why the education credits were disallowed (i.e., for lack of substantiation).

Petitioners were advised, if they did not agree with the proposed changes, to respond to the notice with a signed statement explaining their disagreement and to include any documentation that would support their claim. They were given until June 6, 2018, to respond or respondent would send them a Statutory Notice.

*December CP 2000 Notice*

On December 24, 2018, respondent sent petitioners a second Notice CP 2000 (December CP 2000 Notice), which began by thanking petitioners for their response to the May CP 2000 Notice and continued: "Based on your response, we've determined you owe $7,527 (including interest), which you will need to pay by January 23, 2019."[2] The December CP 2000 Notice contains Table 3, similar to Table 1 but with some revised entries, as follows.

---

[2] The $7,527 includes a deficiency of $5,795 as well as a substantial understatement penalty of $1,159 and interest of $573.

*Table 3*

| Changes to your 2016 Return | | | |
|---|---|---|---|
| **Your income and deductions** | Shown on Return | As corrected by IRS | Difference |
| Other income | $0 | $25,312 | $25,312 |
| **Change to taxable income** | — | — | 25,312 |
| **Your tax computations** | Shown on Return | As corrected by IRS | Difference |
| Taxable income | $41,578 | $66,890 | $25,312 |
| Tax | 5,309 | 9,104 | 3,795 |
| Education credits | 2,000 | 0 | −2,000 |
| Child tax credit | 1,000 | 1,000 | 0 |
| Total tax | — | — | 5,795 |
| **Tax you owe** | — | — | $5,795 |

Table 4, under the heading "**Explanation of changes to your 2016 Form 1040**," shows the following.

*Table 4*

| Other Income | | | | | |
|---|---|---|---|---|---|
| Received from | Address | Account information | Shown on Return | Reported to IRS by others | Difference |
| WALGREEN CO. | . . . | SSN: . . . Form 1099–MISC | **$49,062** | **$49,062** | **$0** |

Following Table 4 is the same description as in the May CP 2000 Notice of the reason the education credits were disallowed (lack of substantiation).

Finally, like the May CP 2000 Notice, the December CP 2000 Notice invited petitioners to respond by January 23, 2019, or respondent would send them a Statutory Notice.

*Statutory Notice*

Respondent mailed the Statutory Notice to petitioners on April 22, 2019. The Statutory Notice is addressed to petitioners and consists of seven pages. On each page but the last (a waiver for petitioners' use if they decide to concede the deficiency and the penalty) appears the Social Security number of one of them (we assume petitioner husband because his name appears first on the Statutory Notice). All the pages reference the 2016 tax year. Immediately under petitioners' address on the first page is the following banner, in bold print: "**Notice of Deficiency**[,] **Proposed increase in tax and notice of your right to challenge**." Table 5 follows.

*Table 5*

| Summary of proposed changes | |
| --- | --- |
| Increase in tax (deficiency) | $5,795 |
| Substantial tax understatement penalty | 1,159 |

The first substantial paragraph of text on the first page is as follows.

> We have determined there is a deficiency (increase) in your 2016 income tax based on information we received from third parties (such as employers or financial institutions) that doesn't match the information you reported on your tax return. See below for an explanation of how this increase was calculated. This letter is your NOTICE OF DEFICIENCY, as required by law.

The fifth page of the Statutory Notice contains two tables identical to the two tables in the December CP 2000 Notice (Tables 3

7

and 4) and the same description as follows Table 4 as to why the Education Credits were disallowed (lack of substantiation).

*Petition*

The following are among petitioners' assignments of error:

1. The Statutory Notice fails to specifically identify the income resulting in the increase in petitioners' taxable income.

2. Respondent failed to accord petitioners a deduction for attorney's fees paid in connection with the collection of income.

3. Respondent failed to give petitioners credit for qualified educational expenses incurred in 2016.

Among petitioners' averments is that petitioners "incurred . . . deductible attorney's fees in connection with the collection of income from Walgreens [sic]."

*Answer*

Respondent denied that he erred as petitioners assigned.

*Premature Assessment*

Sometime soon after petitioners filed the Petition, respondent assessed the tax and penalties determined in the Statutory Notice. Soon thereafter, respondent abated those assessments.

*Discussion*

I. *Introduction*

In general, the parties agree as to the questions presented to the Court. Petitioners frame those questions as follows.

1. Is the Statutory Notice entitled to a presumption of correctness, and, if not, did respondent carry his burden to prove that the deficiency was assessed correctly?

2. Is respondent's Exhibit 7 admissible?

3. Did respondent abate the deficiency assessed against petitioners before trial?

At trial and on brief, petitioners concede that if (1) the Court finds that the Statutory Notice is valid, (2) respondent does not bear the burden of proof, and (3) respondent did not concede error in the deficiency by abating the tax assessed against petitioners, they have nothing to rebut respondent's adjustments increasing their income by $25,312 and disallowing their claimed education credits.

II.     *"Is the Statutory Notice Entitled to a Presumption of Correctness, and, If Not, Did Respondent Carry His Burden to Prove That the Deficiency Was Assessed Correctly?"*

A.      *Introduction*

It is not clear what petitioners are driving at with this compound question.[3]  They begin their argument that the Statutory Notice should not be presumed to be correct by citing *Scar v. Commissioner*, 814 F.2d 1363 (9th Cir. 1987), *rev'g* 81 T.C. 855 (1983), for the proposition that a statutory notice "must reflect a consideration by the Service of information that relates to the particular taxpayer to whom the notice is directed."  In *Scar*, the Court of Appeals for the Ninth Circuit considered a statutory notice that, on its face, revealed that no determination of a deficiency had been made with respect to the taxpayers for the year in question.  *See id.* at 1370.  The Court held that the statutory notice was invalid and the petition contesting the statutory notice should have been dismissed in the taxpayers' favor for lack of jurisdiction.  *See id.*  If the Commissioner fails to issue a valid statutory notice, we will, on that ground, dismiss the case for lack of jurisdiction.  *See, e.g.*, *Abeles v. Commissioner*, 91 T.C. 1019, 1038 (1988).  If the case is dismissed, however, then the burden of proof is no longer of any consequence.  It is only with respect to a *valid* statutory notice that the allocation of the burden to prove facts necessary to determine the correct amount of a deficiency in tax matters.

_____

[3] It is also not clear whether petitioners (i.e., their counsel) comprehend that, as used in the Code, the words "deficiency" and "assessment" are terms of art.  A deficiency is defined generally as the excess of tax owed over tax shown by the taxpayer on a return plus the amount of tax previously assessed less any rebates.  *See* § 6211(a). An "assessment" is the recording of a taxpayer's liability in the Commissioner's books and records.  *See* § 6203.  Assessment is necessary before the Commissioner may begin collection of any unpaid tax by giving notice, and demanding payment, of the unpaid tax.  *See, e.g.*, § 6303.  In general, the Commissioner is prohibited from assessing the deficiency in tax (or any remaining part of it) for a period after the mailing of a notice of deficiency and until after the conclusion of any resulting proceedings in court.  *See* § 6213(a).

We will first consider whether the Statutory Notice is valid. Because we find that it is, we will then turn to petitioners' arguments concerning the burden of proof.

B.    *Validity of the Statutory Notice*

1.    *Introduction*

Section 6212(a) authorizes the Secretary (i.e., the Commissioner or his delegate) to send a statutory notice of deficiency when he determines a deficiency in tax.  But the Code does not specify the form of the statutory notice.  Section 7522(a) provides that the statutory notice must "describe the basis for, and identify the amounts (if any) of, the tax due, interest, additional amounts, additions to the tax, and assessable penalties included in such notice."  "But even an inadequate description does not invalidate a notice." *Dees v. Commissioner*, 148 T.C. 1, 4 (2017).  And the Commissioner does not need to explain how a deficiency was determined.  *Ginsburg v. Commissioner*, 127 T.C. 75, 82 (2006); *see also Scar v. Commissioner*, 814 F.2d at 1367.

We have held that "[t]he essential purpose of a deficiency notice is to provide a formal notification that a deficiency in taxes has been determined." *Pietz v. Commissioner*, 59 T.C. 207, 213–14 (1972).  Our view of what it takes to accomplish that purpose has been evolving. *See DeCrescenzo v. Commissioner*, T.C. Memo. 2023-7.  Three cases mark that evolution: *Scar*, 81 T.C. 855, *Campbell v. Commissioner*, 90 T.C. 110 (1988), and *Dees*, 148 T.C. 1.  The Statutory Notice passes muster under each.

2.    Scar*,* Campbell*, and* Dees

The Statutory Notice is addressed to petitioners and, on the first page, states the taxable year involved and sets forth the amounts of the deficiency in tax and penalty determined.  It thus satisfies the requirements of section 6212(a) as we interpreted them in *Scar*. *See Scar*, 81 T.C. at 860–61 ("The requirements of section 6212(a) are met if the notice of deficiency sets forth the amount of the deficiency and the taxable year involved.").

Because the Statutory Notice does not reveal on its face that respondent *failed* to determine a deficiency in petitioners' 2016 income tax, a presumption arises under *Campbell* that he *did* determine such a deficiency.  *See Campbell*, 90 T.C. at 113.  Petitioners offer nothing to rebut the presumption, arguing only that the Statutory Notice "should

not be *presumed correct* because no evidence exists to substantiate where the $25,312 in supposed unreported income originated or why it is taxable." (Emphasis added.) Whether respondent is (or should be presumed to be) *correct* in his determination of a deficiency in tax is a different question from whether he *determined* a deficiency in the first place. Petitioners have presented no evidence that respondent failed to determine a deficiency (and penalty) with respect to petitioners for 2016. The Statutory Notice passes muster under *Campbell. See id.* at 113–14.

It likewise passes muster under *Dees*, 148 T.C. at 6, in which we said: "[I]f the notice is sufficient to inform a reasonable taxpayer that the Commissioner has determined a deficiency, our inquiry ends there; the notice is valid." Clearly the Statutory Notice would inform a reasonable taxpayer that respondent determined a deficiency in his 2016 tax; it says as much on its first page. And, while our hypothetical reasonable taxpayer might scratch his head over the "Explanation of changes to your 2016 Form 1040," *see supra* p. 7 and Table 4, showing a zero difference between the amount reported by "WALGREEN Co." ($49,062) and the amount shown on the 2016 Return ($49,062), he would have no doubt from the explanation following Table 4 that the education credit was disallowed for lack of substantiation, which, looking at the computations in Table 3, would leave a deficiency in tax even if the $25,312 "Change to taxable income" were eliminated.

### 3. *Conclusion*

We will not dismiss this case for lack of jurisdiction on the grounds that the Statutory Notice is invalid.

### C. *Burden of Proof*

### 1. *Introduction*

Generally, the burden of proving facts relevant to the Commissioner's determination of a deficiency in tax is on the taxpayer. *See* Rule 142(a)(1).[4] "That . . . has often been interpreted to mean that the taxpayer bears the ultimate burden of persuasion; i.e., the risk of nonpersuasion, as well as the initial burden of production." *Westby v. Commissioner*, T.C. Memo. 2004-179, 2004 Tax Ct. Memo LEXIS 186,

---

[4] Petitioners have not raised the applicability of section 7491(a), which shifts the burden of proof to the Commissioner in certain situations. We conclude that section 7491(a) does not apply here because petitioners have not produced any evidence that they have satisfied the preconditions for its application.

at \*22–23. There are, however, situations where the taxpayer is relieved of either the initial burden of producing evidence relevant to the Commissioner's determination of tax or the full burden of proof with respect thereto.[5] One situation where the initial burden of production is on the Commissioner is in the case of what is sometimes called a "naked assessment;" i.e., the determination of a tax liability "without rational foundation and excessive." *United States v. Janis*, 428 U.S. 433, 441 (1976) (quoting *Helvering v. Taylor*, 293 U.S. 507, 514 (1935)). Petitioners devote almost a third of their Opening Brief to arguing that respondent has made a naked assessment.[6]

### 2.  *Arbitrariness*

The rule of *Taylor* may be simply put: A court is given sufficient cause to set aside the Commissioner's determination of a deficiency if it is shown to the Court that the determination was arbitrarily made and is excessive. *See Helvering v. Taylor*, 293 U.S. at 515. Petitioners argue that the Statutory Notice is without foundation (i.e., "[n]othing in the . . . record . . . explains the source of the $25,312 that Respondent claims

---

[5] For example, Rule 142(a) provides that, with respect to new matters, increases in deficiency, or affirmative defenses pleaded in the answer, the burden of proof is on the Commissioner.

[6] Another situation in which the Commissioner bears the initial burden of production is in unreported income cases. We have said: "[T]he Commissioner must establish a 'minimal evidentiary showing' connecting the taxpayer with the alleged income-producing activity or demonstrate that the taxpayer actually received unreported income." *Walquist v. Commissioner*, 152 T.C. 61, 67 (2019) (citation omitted). The requisite evidentiary foundation to connect a taxpayer with an income producing activity is minimal and need not include direct evidence. *See, e.g.*, *Banister v. Commissioner*, T.C. Memo. 2008-201, 2008 WL 3925877, *aff'd*, 418 F. App'x 637 (9th Cir. 2011). In *Banister*, 2008 WL 3925877, at \*2, we held that a deficiency notice based on information from third-party payors that they paid the taxpayers was enough to meet the minimal evidentiary burden even though direct evidence of payment was not in the record. Here, Mr. Delgado receive two information returns from Walgreen, one a Form W–2 reporting wages of $8,437 paid him for 2016 (which petitioners reported on the 2016 return) and the second a Form 1099–MISC reporting $49,062 of "other income" paid him for that year. Those two forms evidence Mr. Delgado's connection with an income-producing activity. The fact that respondent's adjustment for unreported "other income" is for an amount less than the amount reported on the Form 1099–MISC does not alter the fact that respondent has connected Mr. Delgado with an activity that, in addition to paying him wages, may have paid him "other income," which petitioners failed to report. Respondent has made the minimal evidentiary showing required of him. Nonetheless, he will still bear the burden to produce evidence of a deficiency in tax if petitioners can show his determination was arbitrary and erroneous. *See Walquist*, 152 T.C. at 68.

Petitioners received but failed to report . . . or why such amount is taxable") and is inherently arbitrary. Accordingly, petitioners argue that the Statutory Notice constitutes a "naked assessment," which is "invalid" within the rule of *Taylor*.[7]

The burden is on the taxpayer to prove that the Commissioner arbitrarily determined a deficiency in the taxpayer's tax. *See id*. If the taxpayer carries that burden, then the burden of going forward with evidence of a deficiency in tax shifts to the Commissioner. *See Berkery v. Commissioner*, 91 T.C. 179, 186 (1988), *aff'd without published opinion*, 872 F.2d 411 (3d Cir. 1989). In *Taylor*, the Supreme Court used the term "arbitrary" in its usual and ordinary sense meaning: for example, "capricious, irresponsible," or the like. *Calafato v. Commissioner*, 42 B.T.A. 881, 889 (1940), *aff'd*, 124 F.2d 187 (3d Cir. 1941). With that meaning in mind, we conclude that petitioners have failed to prove that respondent arbitrarily determined a deficiency in their 2016 income tax.

For some or all of 2016, Mr. Delgado worked for Walgreen, and it reported to both Mr. Delgado and to respondent that, for 2016, it had paid Mr. Delgado wages of $8,437 and "other income" of $49,062. Petitioners did not report the latter sum on the 2016 Return, and, as a consequence, respondent sent petitioners the May CP 2000 Notice, which (1) described the discrepancy between what Walgreen had reported as other income received by Mr. Delgado and what petitioners had reported, (2) questioned two tax credits petitioners had claimed, (3) proposed changes to the amounts of income and tax they had reported, and (4) invited petitioners, if they did not agree with the proposed changes, to respond with a signed statement explaining their disagreement and any documentation that would support their claim. Apparently, petitioners took up the invitation to respond because respondent begins the December CP 2000 Notice by thanking them for their response to the May CP 2000 Notice. On the basis of their

---

[7] To hold that a statutory notice is invalid within the rule of *Taylor* because it constitutes a "naked assessment" is not to hold that it is invalid in the sense that this Court lacks jurisdiction over the notice. *See supra* Part II.B. "*Helvering v. Taylor . . .* teaches that when a [taxpayer] makes a showing casting doubt on the validity of a deficiency determination, the statutory notice itself is not rendered void; the result of such showing is that the [Commissioner] must then come forward with evidence to establish the existence and amount of any deficiency." *Suarez v. Commissioner*, 58 T.C. 792, 814 (1972), *overruled as to another issue*, *Guzzetta v. Commissioner*, 78 T.C. 173 (1982). To avoid confusion, we will refer to a statutory notice held to constitute a naked assessment as "arbitrary."

response, respondent reduced the amount of additional tax he believes they owe. In the section of the December CP 2000 Notice in which he proposes changes to the 2016 Return, respondent has reduced his proposed change for unreported "other income" from $49,062 to $25,312. In the explanation sections of both notices, *see supra* Tables 2 and 4, he identifies Walgreen as the source of the unreported income and references a Form 1099–MISC. Anomalously, the explanation section of the December CP 2000 Notice states that petitioners reported $49,062 on their return as income received from Walgreen (which equals the amount stated as the amount Walgreen reported to respondent, resulting in a difference (unreported income) of zero). As in the May CP 2000 Notice, the December CP 2000 Notice invites petitioners to respond if they do not agree with respondent's proposed changes. There is no evidence petitioners responded to the December CP 2000 Notice.

The inference that we draw from that telling is that, because of his intercourse with petitioners, respondent came to believe that, for 2016, Mr. Delgado had received income from Walgreen that petitioners had failed to report but in an amount not greater than $25,312. We must speculate as to respondent's state of mind because neither party called a witness to testify as to the intercourse nor has respondent pursued admission of his Exhibit 7–R.[8] We are not much troubled by the anomalous entry in the December CP 2000 Notice explanation that petitioners reported $49,062 received from Walgreen (and, therefore, did not understate their income from it). The 2016 Return is in evidence and contradicts that entry (a "clerical error," claims respondent).

Moreover, besides the history of events leading up to the Statutory Notice, we have petitioners' assignment that respondent, in error, disallowed them a deduction for attorney's fees and their averment that, for 2016, they "incurred . . . deductible attorney's fees in connection with the collection of income from Walgreens [sic]." We also

---

[8] Respondent's Exhibit 7–R purportedly contains a business record of his (i.e., the Note Transcript) that would inform us of the intercourse between him and petitioners. At trial, petitioners objected to our admitting Exhibit 7–R into evidence. After some discussion of petitioners' objections (relevancy, authenticity, and hearsay), we instructed the parties to make their arguments about admissibility on brief. Petitioners have done so, while respondent, under the heading "Exhibit 7–R is admissible under the Federal Rules of Evidence," announces that, because he understands petitioners to concede the adjustment for unreported income if the Statutory Notice is found valid, he "is no longer pursuing the evidence in Exhibit 7–R." Given respondent's apparent ambivalence and his failure to make argument as we directed, we consider him to have abandoned (withdrawn) Exhibit 7–R, and do not address petitioners' objections.

have respondent's counsel's uncontested claim made at trial that petitioners' 2016 unreported income resulted from "a[n] employment discrimination claim that Mr. Delgado had with Walgreens [sic]." That is consistent with Mr. Delgado's receiving from Walgreen for 2016 "other income" reported to him on Form 1099–MISC in addition to wages reported to him on Form W–2.

We are satisfied that neither the $25,312 adjustment to income nor the credit disallowance made in the Statutory Notice was made by respondent capriciously, irresponsibly, or otherwise arbitrarily in the usual and ordinary sense of those words. *See Calafato*, 42 B.T.A. 881. In other words, petitioners have failed to prove that respondent's determination of a deficiency in tax for 2016 was arbitrarily made. Respondent need not, on account of having made a "naked assessment," come forward with evidence of a deficiency.

### 3. *Conclusion*

Before concluding our discussion of burden of proof, we note that petitioners have not raised section 6201(d), which provides that, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on a third-party information return and the taxpayer has fully cooperated with the Secretary, the Secretary has the burden of producing reasonable and probative information concerning that deficiency in addition to that information return. Perhaps petitioners' failure to raise section 6201(d) is due to their having no reasonable dispute that they did not receive $25,312 of "other income" from Walgreen.[9]

Petitioners have given us no reason to deviate from the general rule that, in Tax Court litigation, the taxpayer bears the burden of proof, and we find that petitioners do bear the burden of proof. *See* Rule 142(a).

## III. *Premature Assessments*

Sometime soon after petitioners filed the Petition, respondent assessed the tax and penalties determined in the Statutory Notice but, quickly thereafter, abated those assessments. Petitioners argue that respondent's abatement of the assessments before trial signifies that respondent "[intended] to abate the tax . . . previously assessed . . . and close this case prior to trial." Respondent counters that his abatement

---

[9] Nor is there evidence of their cooperation with the Secretary. Petitioners responded to the May CP 2000 Notice but resist providing us their response.

"does not mean that petitioners . . . [had no] additional tax liability for . . . 2016."

Where a Petition has been filed, section 6213(a) prohibits assessment or collection of a deficiency until our decision in the case becomes final. None of the exceptions to section 6213(a) is applicable in the present case. The assessment was prohibited by section 6213(a), and the abatement was proper. In *Connell Business Co. v. Commissioner*, T.C. Memo. 2004-131, 2004 WL 1194626, at *5, where the taxpayer made an argument like petitioners', we said:

> While the abatements might be construed to constitute an admission that the prior assessments were premature, they in no way constitute admissions as to the proper amount of the deficiencies. See *Pfeifer v. Commissioner*, T.C. Memo. 1983-437 ("There is no merit to [the taxpayer's] contention that the abatement [of a premature assessment] was determinative of his tax liability.").

The same applies here.

IV.    *Deficiency in Tax*

Having rejected petitioners' arguments that the Statutory Notice is invalid, that respondent bears the burden of proof, and that, by his abatement of the premature assessment, respondent conceded error in his determination of a deficiency in tax, we are left with petitioners' concession that, if we reject those arguments, they have nothing to rebut respondent's adjustments increasing their income by $25,312 and disallowing their claimed education credits. On the basis of petitioners' concession, we sustain those adjustments.

V.    *Section 6673(a)(1) Penalty*

Petitioners have no arguments on the merits to respondent's adjustments resulting in a deficiency in income tax. Their grounds for this lawsuit are process related, and we have rejected all of those grounds. The course of respondent's determination of a deficiency in petitioners' 2016 income tax is fairly clear. There is, however, one opaque chapter, i.e., petitioners' intercourse with respondent in response to the May CP 2000 Notice. Petitioners have not volunteered that information, and they have objected to respondent's attempts to inform us. Petitioners' response to the May CP 2000 Notice may well have resolved the confusion resulting from the improbable statement

both in the December CP 2000 Notice and in the Statutory Notice that petitioners had reported $49,062 on the 2016 Return. Petitioners' failure to be forthright and their lack of arguments on the merits lead us to suspect that perhaps they have little or no reason for bringing this lawsuit other than to delay collection of a tax rightfully owing.

In pertinent part, section 6673(a)(1) allows us to impose a penalty of up to $25,000 if (1) the taxpayer has instituted or maintained proceedings before the Tax Court primarily for delay or (2) the taxpayer's position in the proceeding is frivolous or groundless. "Groundless" means "lacking a basis or a rationale." *Groundless*, *Black's Law Dictionary* (11th ed. 2019). Further, "[t]he purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate." *Takaba v. Commissioner*, 119 T.C. 285, 295 (2002).

Before entering decision in this case, we will order petitioners to show cause why we should not impose a penalty on them under section 6673(a)(1) for instituting or maintaining this proceeding primarily for delay by advancing groundless process-related arguments.

To reflect the foregoing,

*An appropriate order will be issued.*